It is also a well-accepted rule that statutes authorizing the imposition of taxes and assessments must be strictly construed in favor of the taxpayer, and that, when there is any ambiguity in the statute or doubt as to its effect, every doubt must be resolved and every intendment taken against the taxing power and in favor of the taxpayer.

The act under consideration permits the tax commissioners to add to the assessment roll after the second Monday of January the name of any owner of personal estate that may have been omitted from such rolls. The question is whether the word "owner," as here used, includes an executor or trustee. In a strict legal sense an executor is the owner of the personal property belonging to the estate, but it has been recognized universally that this ownership is of a qualified nature. In People ex rel. Darrow v. Coleman, 119 N. Y. 137, 23 N. E. 488, 1 L. R. A. 407, the Court of Appeals had before it the question of the taxability of personal property owned by three trustees, two of whom resided in this state, the third, who had the actual custody of the property, residing in a foreign state. It was sought to tax the property here on account of the residence here of two trustees, who were joint owners of the property. The court said:

"The case here presented is one where the persons assessed are not absolute owners of the property, but are trustees and have only a representative or official interest therein. * * * Generally a man is not spoken of as the owner of property who merely holds it as trustee and in a representative capacity."

There are a large number of cases in which this case is cited as authority for the proposition that within the meaning of the tax laws an executor or trustee is not included in the word "owner."

The tax statutes preserve and observe the same distinction, and, while they provide for the assessment of executors and trustees, as well as absolute owners, they speak of property "owned" by the latter class and of property "held" by the former. It is significant in my opinion that nowhere have I been able to find in the general tax law, or in the charter, the word "owner" used generically to include both absolute owners and qualified owners. On the contrary, in numerous sections in both acts, where it was desirable to use a generic word, the word "person" is used. I am therefore of opinion that it would be unreasonable and contrary to the accepted canons of construction to interpret the word "owner" in the section quoted as including executors and trustees.

The order appealed from should be affirmed, with costs.

---

### In re KANE.

(Supreme Court, Appellate Division, Second Department. April 28, 1911.)

1. ELECTIONS (§ 51*)—ELECTION COMMISSIONERS—APPOINTMENT—APPOINTING POWER—"RECOMMENDING."

  Const., art. 10, § 2, provides that all other officers whose "election or appointment" is not provided for by the Constitution shall be elected or appointed as the Legislature directs. Election Law (Consol. Laws 1909, c. 17) § 190, creates a board of elections in every first class city of four

persons. Section 191 requires such commissioners of elections to be appointed by the mayor and any vacancy to be filled by him. Section 193 provides that the mayor of New York City shall appoint four persons as commissioners, not more than two of whom shall belong to the same political party. Section 194 provides that the chairmen of the county committees within New York and Kings counties of each of the two political parties polling the highest and next highest number of votes shall file with the mayor of New York City a certificate in the form stated, each of which four certificates shall certify the name of a qualified voter who is recommended as a proper person to be appointed for election commissioner, and the certificate certifies that the person named is a proper person to be appointed commissioner, and that the signer does "hereby recommend" his appointment. Section 195 provides that, in case of a vacancy, the chairman of the party committee shall file with the mayor a certificate certifying and "recommending" the name of a person for commissioner. Const. art. 2, § 6, provides that all laws creating boards charged with registering voters or distributing ballots shall secure equal representation of the two political parties holding the highest number of votes, and such boards shall be appointed as the Legislature may direct. *Held*, that section 194 did not require the mayor of New York City to appoint one as commissioner of elections who was recommended by the chairman of a county committee of Kings county; the mayor not being limited to persons so certified in making appointments.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 51.*

For other definitions, see Words and Phrases, vol. 7, p. 6006.]

2. OFFICERS (§ 14*)—PUBLIC OFFICERS—APPOINTMENT—DELEGATION OF POWER.
While the Legislature in creating a new state office may confer a power of appointment upon some individual or association other than a public officer, it will not be assumed that it intended to do so as the appointment of a public officer usually involves the voluntary exercise of the executive power.

[Ed. Note.—For other cases, see Officers, Dec. Dig. § 14.*]

3. MANDAMUS (§ 12*)—PURPOSES OF RELIEF—DISCRETIONARY POWER.
It is not the province of a writ of mandamus to control a discretionary power.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 37; Dec. Dig. § 12.*]

Appeal from Special Term, Kings County.

In the matter of the application of James Kane for an order directing the issuance of a peremptory writ of mandamus against William J. Gaynor, Mayor of the City of New York. From an order denying the application (129 N. Y. Supp. 990), relator appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, RICH, and WOODWARD, JJ.

Charles H. Kelby, for appellant.

Terence Farley (Louis H. Hahlo, on the brief), for respondent.

WOODWARD, J. [1] The petitioner applied to this court at Special Term for a peremptory writ of mandamus to compel the respondent to appoint him to the office of commissioner of elections in the city of New York, and this application has been denied. The petitioner appeals to this court, and the question here presented is whether under the provisions of section 194 of the election law the respondent was bound to appoint the petitioner; the latter having been recom-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mended by the chairman of the Democratic county committee of Kings county, as provided in that section.

[2] While it will not be questioned that it is within the power of the Legislature in creating a new state office to confer a power of appointment on some individual or association other than a public officer or body (Sturgis v. Spofford, 45 N. Y. 446, 450), such a course is exceptional, and nothing will be presumed in that direction. The appointment of public officials is generally looked upon as involving the executive power. It clearly contemplates a voluntary act on the part of the appointing power (Marbury v. Madison, 1 Cranch, 137, 155, 2 L. Ed. 60), and it is impossible to dissociate the idea of discretion from the power. To appoint without discretion would be a mere ministerial act, and entirely takes away the essential element of an appointment, which is but a substitute for an election; the Constitution providing that:

"All other officers, whose election or appointment is not provided for by this Constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct." Section 2, art. 10.

An election contemplates a free choice of public officers, and an appointment, being a mere substitution for an election, must necessarily involve the same idea, and we are not to look to the Legislature to direct anything which is inconsistent with this fundamental element of an appointment. If there is anything of the kind in the statute, it should be expressed in clear and unequivocal language. We ought not to read anything into the statute for the purpose of producing such a result. Tried by this test, is there anything in the election law which requires the mayor of the city of New York to appoint an election commissioner who has been designated by the chairman of the Democratic county committee of Kings county? Where is the direction of the Legislature that he shall become a mere ministerial officer, doing the bidding of a voluntary organization?

Section 190 of the election law provides that there "shall be a board of elections in every city of the first class in this state which does, or shall, contain within its boundaries one or more counties. The said board shall consist of four persons to be known and designated as commissioners of elections." Section 191 of the same act provided that:

"All such commissioners of elections shall be appointed by the mayor of the city, and shall hold office for a term of two years, except as hereinafter provided. Each of said commissioners of elections shall be at the time of his appointment a resident and a qualified voter of such city. * * * A commissioner of elections may be removed from office by the Governor for cause in the same manner as a sheriff. Any vacancy in the office of commissioner of elections shall be filled by the mayor of the city within five days after the vacancy has been created, and the person appointed to fill such vacancy shall hold office during the remainder of the term."

These provisions are clearly broad enough to cover the city of New York, which is a city of the first class, containing "within its boundaries one or more counties," and the power of the mayor to fill the offices thus created is full and complete, as well as for the filling of va-

cancies, and then section 192 provides for the organization of boards, etc., and section 193 provides:

"The mayor of the city of New York shall appoint four persons as commissioners of elections for the full term of two years beginning at twelve o'clock noon of January first in each odd numbered year, each of whom shall be a resident and qualified voter of the city of New York and not more than two of whom shall belong to the same political party or be of the same political opinion on state or national politics."

Clearly, up to this point, there is no limitation upon the power of the mayor to appoint, except that the appointees shall be resident voters of the city, and "not more than two of whom shall belong to the same political party or be of the same political opinion on state or national politics"; section 196 of the act declaring it to be the "intention of this article, and said intention is hereby declared, to secure in the appointment of the members of the board of elections established by this article, equal representation of the two political parties which at the general election next preceding such appointment cast the highest and the next highest number of votes for Governor, and of which the committees and chairmen of committees have been duly elected as such under and in pursuance of the provisions of article three of this chapter relating to primary elections." Here we have a clear exposition of the purposes of the statute. It is to provide for a bipartisan election board in the city of New York, and the mayor is given full authority to appoint such a board. Nothing whatever is said about any one sharing in this responsibility by advice or consent or by way of nomination. The real question, then, is whether these provisions of the statute are modified, so as to practically take this appointing power, so fully declared from the mayor, and vest it in the chairmen of the two dominant political parties in the city of New York. If such a modification of the power of selection was intended, we should naturally expect it to be fully and clearly stated, and yet nowhere within the limits of section 194 of the election law is there any suggestion that any one other than the mayor is to have the power of appointment or of nomination, and the legitimate purposes of the statute may be fully served and promoted by giving to the language its obvious meaning. Section 194, in which, if at all, the power contended for by the petitioner must be found, reads as follows:

"At least five days before the first day of January in each odd-numbered year, the respective chairmen of the county committees within the counties of New York and Kings of each of the two political parties which at the general election last preceding the date of such certificate cast the highest and the next highest number of votes for governor, shall each respectively make and file or cause to be filed with the mayor of the city of New York, a certificate in substantially the following form, each of which four certificates shall certify the name of a person who is a resident and qualified voter of the city of New York and who is recommended as a fit and proper person to be appointed a commissioner of elections for the term of two years beginning with the first day of January next ensuing:

" 'To Honorable ———, Mayor of the City of New York.

" 'I, ———, chairman of the county committee of the ——— party, for the county of ———, do hereby, in accordance with the provisions of section two hundred and four of the election law, certify that in my opinion and in the opinion of the said committee, ———, a resident and qualified voter of the

borough of ———, city of New York, is a fit and proper person to be appointed a commissioner of elections, and I do hereby recommend him for appointment to said office. In witness whereof, I have made and executed this certificate, this ——— day of ———, 19—.'"

There are some ambiguities in this section. Is each chairman of a county committee of a dominant party to make four certificates? The section does not say so. It says that:

The "respective chairmen * * * of the two political parties * * * shall each respectively make and file * * * a certificate in substantially the following form, each of which four certificates shall certify the name of a person who is a resident," etc.

Is each chairman to make two certificates? The section does not say so. It provides that each shall "respectively make and file or cause to be filed with the mayor, * * * a certificate in substantially the following form," and the form given only provides for the recommendation of one person, and there is no provision for making and filing any other certificate, unless this is to be inferred from the provision that "each of which four certificates shall certify the name of a person," etc. But there is no authorization of more than one certificate from each of two political parties, and upon this review there is only one certificate before us, which is that of James D. Bell, chairman of the Democratic county committee of Kings county, recommending the appointment of the petitioner, and there is no allegation or suggestion that any other certificate was made and filed with the mayor, though he is called upon to appoint four commissioners, not more than two of whom are to belong to the same political party. Probably the fair construction of this statute is that each chairman of a political committee of a dominant party shall make one certificate for each of the two places to be filled by the appointment of the mayor from his political party, but there is nothing in the statute which would prevent the chairman of the Republican county committee from certifying that the petitioner was a resident and qualified elector of the borough of Brooklyn, and that he was a fit and proper person to be appointed. The certificate is not required to allege that the person recommended is a member of the same political party as the chairman who recommends him, or that he is a member of either political party, yet the statute clearly requires the mayor in making his appointments to confine his selections equally to each of the two leading parties, and the evident purpose of the provisions of section 194 was not to further limit the appointing power, but to make provision for pointing out to the mayor persons who are eligible, to the end that there could be no pretext for violating the bipartisan plan of the statute. If each of the two leading parties pointed out to the mayor two men who were satisfactory to the regularly constituted party organization, then there could be no reasonable excuse for quibbling over the matter, and, if the mayor went outside of these recommendations and appointed other persons, he would assume the responsibility of a compliance with the provisions of the statute that not more than two of them should be a member of the same party.

[3] Had the statute provided that each chairman of a dominant

political party should certify four members of his own party, so that there would be room for the exercise of discretion in the selection, there might be some force to the contention that it was the duty of the mayor to make the appointment from among the names so certified in behalf of each party, but this would give no individual a right to a peremptory writ of mandamus to compel his own appointment. The most that could be done would be to compel the mayor .to act— to appoint some two of such persons; but it is never the province of mandamus to control a discretionary power. The statute has, however, made no such provision. The most that can be spelled out of it is that "each of which four certificates shall certify the name of a person * * * who is recommended as a fit and proper person to be appointed," etc., and as four persons are to be appointed, and no reference is made to any more than four certificates, it is plain that the whole purpose of section 194 of the election law is to impose the duty of recommending two fit and proper persons from each of the two leading political parties upon the chairmen of the county committees of such parties. All of the language of the section is consistent with a recommendation for an appointment, while it is wholly lacking in any of the elements of an authorization of an appointment by the chairmen of these committees; and nowhere is there any express language calling upon the mayor to make an appointment from the names thus recommended. The language of the section is that these chairmen "shall each respectively make and file or cause to be filed with the mayor of the city of New York, a certificate in substantially the following form, each of which four certificates shall certify the name of a person who is a resident and qualified voter of the city of New York and who is *recommended* as a fit and proper person to be appointed a commissioner of elections"; and the statutory form of the certificate provides that the person named "is a fit and proper person to be appointed a commissioner of elections, and I do hereby *recommend* him for appointment to said office." A statutory duty to recommend for appointment is not a command to the mayor to appoint such person so recommended. It is merely advisory, and is provided for the purpose of making certain that the mayor will have before him persons who are recognized as representatives of their respective parties, but the statute will be searched in vain for any provision which makes it the duty of the mayor to appoint these persons. If he did appoint such persons, he would undoubtedly be relieved of all responsibility for the political character of such appointees, but this is far from holding that there is such a clear legal obligation resting upon the mayor to appoint each person so certified as to entitle the petitioner to a writ of mandamus.

That this is the correct construction of the statute, and that the mayor is not limited to persons certified, is clearly evidenced by the provisions of section 195 of the election law, which provides that in the event of a vacancy the chairman of the party committee in which the vacancy occurs, and in the district in which the vacancy shall exist "shall make and file or cause to be filed with the mayor of the city of New York, a certificate in substantially the form and executed and acknowledged as above provided, certifying and *recommending* the

name of a person, who is a resident and qualified voter of said city, as a fit and proper person to be appointed a commissioner of elections for the unexpired term of the commissioner creating such vacancy. At least two days' time, after a vacancy has been created, for the making and filing of the certificate above provided for, shall be afforded by the mayor, before making any appointment to fill such vacancy, to the person upon whom the duty is imposed hereunder to make said certificate and file the same or cause the same to be filed." No suggestion is made that the mayor must appoint such person. He must merely permit of a delay of two days for the filing of such certificate, the purpose being always to have one proper person pointed out by an authoritative representative of the party organization, leaving it to the mayor to determine, in the exercise of the prerogative of appointment, whether he will accept such recommendation or not. Giving this construction to the statute, we give effect to every word and line of the act. We give to the word "appointment" its common, everyday meaning—the exercise of a discretionary choice—and to the word "recommend" its full significance. The chairman of each political party names two men who are recommended for appointment, and the mayor in the fulfillment of his obligation to make the appointment, determines whether he will appoint those whom the party organization recommends, or those who have been recommended to his attention through other channels. Charged with the duty of appointment, with no limitation upon the use of that word, the mayor has no right to appoint any one against his own judgment of the proprieties, for he must use his discretion in making an appointment, or it is not an appointment in the spirit of our institutions. As we have already pointed out, the appointing power is a substitute for election, and no one would pretend that the voters of a community could be said to have had an election where they were limited in their balloting to four men for four positions; each of these four men having been designated by others. When the Constitution provides that "all other officers, whose election or appointment is not provided for by this Constitution, and all officers, whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct," it contemplates that whoever is vested with the appointing power is to exercise the discretion of making a choice, and when the statute declares that the "mayor of the city of New York shall appoint four persons as commissioners," etc., the duty of making a choice was constitutionally vested in the mayor, and that duty precludes the idea of his being obliged to accept the recommendation of the chairman of a political organization. The Legislature, it is true, might have made the choice to depend upon the joint action of the mayor and the chairmen of these political committees. It might have made it depend upon the advice and consent of these chairmen, or of one of them in the case of each party representative. Indeed, it might have made the appointing power to vest in any officer, group of officers or citizens, but, wherever the appointing power vested, it must be that appointing power which is a substitution of election, and it must involve the element of a discretionary choice. It is not competent for the Legislature to create an

office and vest the appointing power in the mayor of a city, and then take from that officer the discretion which is involved in the power of "appointment," as that word is used and understood in the Constitution of this state. Once the power of appointment is pointed out, it carries with it the elements of the appointive power under the provisions of section 2 of article 10 of the Constitution, and, the statute now under consideration having declared that the mayor shall appoint these commissioners of election, it is not the province of this court to place such a construction upon subsequent provisions of the statute as shall defeat this power, and make it rest in voluntary political organizations, owing no legal duties to the state. See generally People ex rel. Balcom v. Mosher, 163 N. Y. 32, 39, 57 N. E. 88, 79 Am. St. Rep. 552.

The suggestion that this question is governed in any degree by the provisions of section 6 of article 2 of the Constitution seems to us without merit. The history of that provision, and its language, clearly indicates that its design was to provide for those local election boards which were familiar to all the people and were common to every voting district, and it has no relation whatever to boards of election created for the purpose of performing in large cities the duties, with some additions, which are generally imposed upon county clerks and similar officers. The language of the section is limited to "all laws creating, regulating or effecting boards of officers charged with the duty of registering voters, or of distributing ballots ·at the polls to voters, or of receiving, recording or counting votes at an election," and clearly none of these duties are cast upon the board of elections of the city of New York. These are the duties imposed by statute upon inspectors of elections, poll clerks, and ballot clerks (sections 353, 354, 355, 356, Election Law), while the duties of the board of elections of the city of New York are to execute "the laws relating to all elections held within their respective cities, except as otherwise provided by law." The duties of election boards are the same in the city of New York as in other parts of the state. They are "otherwise provided by law," and the board of elections has nothing to do with the discharge of the duties which are prescribed for inspectors of elections, ballot clerks, etc., and which are referred to in the constitutional provision now under consideration.

The order appealed from should be affirmed, with $10 costs and disbursements.

HIRSCHBERG and RICH, JJ., concur. BURR, J., concurs in result in separate memorandum, with whom JENKS, P. J., concurs.

BURR, J. I concur in the result in this case. I think that the mayor is not a mere ministerial officer to register the will of a county committee, and to appoint as one of the commissioners of election any person designated by such committee, even although such person ·may be eminently qualified for the position. Under the limitations hereinafter suggested, he is entitled to exercise his own judgment in respect thereto. For that reason the relator cannot succeed in this proceeding.

I do not wish to be understood as assenting for one moment to the proposition contained in the opinion of Mr. Justice WOODWARD that "the mayor is given full authority to appoint such a board" (the board of election commissioners), without "any one sharing in this responsibility, by advice or consent, or by way of nomination." To so hold seems to me to set at naught the clear provisions of the statute. The scheme therein contained is perfectly plain and simple. In effect, it is not unlike the provisions of many other statutes which require that an appointment shall be made by one individual or body of individuals, subject to the approval of another individual or body of individuals. The fact that the approval precedes instead of succeeds the action of the appointing power makes no difference in the principle. The county committee in effect signifies to the mayor that it will approve of his appointment of a designated person. He may not choose to make such appointment. Upon being advised of the fact, the committee must continue to propose the names of individuals who will be approved by it until one is proposed which the mayor is satisfied to appoint.

There is no force in the suggestion that this may lead to a vacancy in the office. Self-interest would require the county committee to use its best endeavors to propose an acceptable person. It is impossible to conceive of a situation where the mayor of a great city could not, with full sense of his own responsibility as the appointing power, find from some of the persons thus designated one who possessed the requisite qualifications for the office as he viewed them. While after the expiration of a designated term the office may be deemed vacant for the purposes of appointing a successor to the former incumbent, until such successor is duly appointed and has qualified, such incumbent would hold over and be entitled to discharge the duties of the office, and receive the salary incident thereto. Laws 1909, c. 51 (Consol. Laws, c. 47) § 5; People ex rel. Lovett v. Randall, 151 N. Y. 497, 45 N. E. 841; De Lacey v. City of Brooklyn (City Ct. Brook.) 12 N. Y. Supp. 540.