(March 19, 1915.)

## DANIEL L. INGARD, Plaintiff, v. GEORGE R. BARKER, Secretary of State, Defendant.

[147 Pac. 293.]

CREATION OF OFFICES NOT PROVIDED BY CONSTITUTION—METHOD OF FILLING OFFICES—LEGISLATIVE POWER—STATUTORY CONSTRUCTION—APPOINTMENTS TO STATE BOARD OF HORTICULTURAL INSPECTORS—POWER OF GOVERNOR TO MAKE UNDER STATUTE—CONSIDERATION OF RECOMMENDATIONS—CONDITIONAL JUDGMENT.

1. The legislature may create an office or offices not otherwise provided for, nor prohibited, by the constitution, and may fix the method of filling such office or offices; and when so created, the appointment or selection of officers to fill such offices may be made either by the chief executive, or by any person, board, corporation or association of individuals as provided by law, and such appointment would not be in conflict with the constitution or an improper exercise of power properly belonging to the executive department of the state government.

2. The framers of the constitution could not foresee what offices might be created by laws subsequently enacted, but they provided that such offices should be filled by the Governor unless the appointment or election should be otherwise provided for.

3. In passing upon the constitutionality of statutes generally, no matter from what standpoint the assault thereon may be made, nothing but a clear violation of the constitution will justify the courts in overruling the legislative will, and where there is reasonable doubt as to the constitutionality of an act, it must be resolved in favor of the act.

4. In the absence of a constitutional provision to the contrary, any one of the three departments of the government may, under the authority of a statutory provision, appoint for any class of office in its department.

5. The legislative body existing by virtue of a constitutional provision has power to enact any laws that are not expressly, or by necessary implication, prohibited either by the federal constitution or the constitution of this state.

6. The power to create offices and provide the method of filling same is, unless otherwise provided for in the constitution, vested in the legislature.

7. The legislature may limit the power of the chief executive in the matter of making appointments.

8. Sec. 1310, Rev. Codes, as amended by the Session Laws of 1911, page 152, providing for the appointment of a state board of horticultural inspectors, does not vest the power of appointment in the State Horticultural Association.

9. It is beyond the authority of this court to make judicial amendments to sec. 1310, Rev. Codes, as amended by chapter 58, Sess. Laws 1911, by adding words thereto, in order to place a legal obligation upon the Governor to appoint members of the state board of horticultural inspectors recommended by the horticultural association, although the court may be of the opinion that a moral obligation rested upon the Governor to act concurrently with the State Horticultural Association in the selection of said members.

10. Where the power of appointment is clearly provided for in the act to be in the executive, and the only limitation attempted to be placed upon the power of the Governor to appoint is that, in making said appointments, he shall consider any recommendations made by the State Horticultural Association as the proper persons to be so appointed, and where the statute fails to fix the number of persons that shall be recommended, the time or place when the recommendations shall be made, the qualifications of the persons so recommended, and to provide that the Governor shall appoint said board from those so recommended, there is no legal obligation resting upon the Governor to appoint said board from the persons so recommended.

11. Statutes should be so construed as to give effect to each and every part thereof, if possible. (*People v. Hunt,* 1 Ida. 433.)

12. Sec. 1310, Rev. Codes, as amended, *supra,* requires the Governor of the state to consider any recommendations for appointment as members of the state board of horticultural inspectors made by the State Horticultural Association, and it is incumbent upon the Governor to carefully consider the person or persons so recommended

before appointing the members of the state board of horticultural inspectors, that by the joint act of the association and the Governor, the purpose and intention of the legislature might be carried out, viz., that the board be constituted of members who are learned in the science of horticulture, to the end that the horticultural interests of the state be properly protected and expanded.

13. Sec. 1310, Rev. Codes, as amended, *supra*, vests in the Governor discretionary power in appointing the members of the state board of horticultural inspectors, which he may do from the list of names recommended by the state horticultural association, but he is not confined, in making said appointments, to the names so recommended.

14. *Held*, that the state horticultural association has not had a reasonable time within which to submit recommendations to the Governor of proper persons to be appointed members of the state board of horticultural inspectors, and under the facts in this case, the State Horticultural Association is allowed sixty days from and after the handing down of this opinion in which to make such recommendations, at the expiration of which time the Secretary of State shall issue commission to any person or persons so appointed.

Original proceeding on application for writ of mandate against the Secretary of State. Writ denied, and conditional judgment ordered.

Hawley & Hawley and Henry Z. Johnson, for Plaintiff.

The Wyoming statute with reference to the duty of the Secretary of State in regard to commissions is to all intents and purposes the same as ours. (Sec. 8, chap. 95, Laws of Wyoming, 1890–91; *State ex rel. Miller v. Barber, Secy. of State*, 4 Wyo. 409, 34 Pac. 1028, 27 L. R. A. 45.)

The supreme court of Wyoming declared that the Wyoming statute was mandatory and that the Secretary of State had no right to refuse to affix the seal of the state, or countersign the commission issued by the Governor, because in the judgment of the secretary the Governor was exceeding his authority in making the appointment. (See, also, *Hill v. State*, 1 Ala. 559, 561; *State v. Harrison*, 113 Ind. 434, 3 Am. St. 663, 16 N. E. 384; *State v. Wrotnowski*, 17 La. Ann. 156, 161.)

Sec. 1310, Rev. Codes, as amended, does not give the power to the State Horticultural Association to name through the Governor the members of the state board of horticultural inspection. Nor does such section merely make it the duty of the Governor to consider the recommendations of said association in making appointments to membership in said board. (*In re Whitcomb's Estate*, 86 Cal. 265, 24 Pac. 1028; *In re Inman*, 8 Ida. 398, 69 Pac. 120.)

The Governor cannot be required to act simply as the mouthpiece of any board or person. (*People ex rel. Balcom v. Mosher*, 163 N. Y. 32, 79 Am. St. 552; 57 N. E. 88; *In re Kane v. Gaynor*, 144 App. Div. 196, 129 N. Y. Supp. 280, 96 N. E. 1117.)

J. H. Peterson, Atty. Genl., T. C. Coffin and E. G. Davis, Assts., for Defendant.

Sec. 6 of art 4 is the only section of the constitution which confers anything like a general appointive power upon the Governor of this state. This section has been passed upon by this court in the case of *In re Inman*, 8 Ida. 398, 69 Pac. 120, in which the court decided, in effect, that the legislature could provide by law for the appointment of officers by the Governor without the consent of the Senate. The construction of this section was also before the court in the case of *Elliott v. McCrea*, 23 Ida. 524, 130 Pac. 785.

The position taken by the court in these cases clearly established the rule, in so far as this jurisdiction is concerned, that the legislature has ample authority to prescribe just how appointments shall be made.

"The power of appointment to office is not essentially an executive function. It may therefore be regulated by law." (29 Cyc. 370; *People v. Freeman*, 80 Cal. 233, 13 Am. St. 122, 22 Pac. 173; *Fox v. McDonald*, 101 Ala. 51, 46 Am. St. 98, 13 So. 416, 21 L. R. A. 529; *State v. Hyde*, 129 Ind. 296, 28 N. E. 186, 13 L. R. A. 79; *Sturgis v. Spofford*, 45 N. Y. 446; *In re Bulger*, 45 Cal. 553.)

The legislature may impose restrictions upon the Governor in the making of appointments. If this were not true, laws providing for civil service classifications and appointments would be unconstitutional, as would also laws attempting to create preferences in favor of honorably discharged soldiers and sailors of the Civil War in matters of appointment. Laws of both classes have been upheld as constitutional. (*People v. Bardin,* 7 N. Y. Supp. 123; *In re Sullivan,* 55 Hun, 285, 8 N. Y. Supp. 401; *In re Gaffney,* 20 N. Y. St. 165, 3 N. Y. Supp. 664; *Kip v. Buffalo,* 123 N. Y. 152, 25 N. E. 165; *People v. Saratoga Springs,* 54 Hun, 16, 7 N. Y. Supp. 125.)

In *Russell v. Lyon,* 90 S. C. 5, 72 S. E. 496, the court was construing a statute which provided that it should be the duty of the Governor to make certain appointments "upon the recommendation of the legislative delegation of G. county." The court first passed upon this statute in the case of *Elledge v. Wharton,* reported in 89 S. C. 113, 71 S. E. 657, and they decided that while officers appointed by the Governor without the recommendation provided for in the statute might be *de facto* officers, they would not be *de jure* officers.

A Secretary of State may not be required by *mandamus* to affix the great seal to and countersign an unlawful instrument issued by the Governor, or to attest his doing an unlawful act. (*People v. State Board of Canvassers,* 129 N. Y. 360, 29 N. E. 345, 14 L. R. A. 646; *People v. Forquer,* 1 Breese (Ill.), 104; *Clarke v. Trenton,* 49 N. J. L. 349, 8 Atl. 509; *State v. Dusman,* 39 N. J. L. 677; *Rose v. Knox Co. Commrs.,* 50 Me. 243.)

BUDGE, J.—On January 21st, 1915, the Honorable Moses Alexander, Governor of the state of Idaho, directed the defendant, as Secretary for the state of Idaho, to issue commissions as members of the state board of horticultural inspection to Daniel L. Ingard, Louis A. Blackman and O. G. Zuck.

The defendant complied with the said direction of the Governor in so far as the same pertained to O. G. Zuck, but declined to comply with the same in so far as it pertained to

Daniel L. Ingard and Louis A. Blackman, alleging that as to the two latter, the attempted appointment was void and of no effect, because of being in conflict with sec. 1310 of the Revised Codes of Idaho, as amended by chapter 58 of the Session Laws of 1911, which provides: ''The state board of horticultural inspectors shall consist of five (5) members, who shall be appointed by the Governor of the state, and shall hold their offices for a term of two (2) years, or until their successors are appointed and qualified; and in making said appointments, the Governor shall consider any recommendations made by the State Horticultural Association as the proper person to be so appointed.''

Daniel L. Ingard, as plaintiff and petitioner, brings this as an original action in the supreme court of this state for the purpose of securing writ of mandate directing the defendant as Secretary of State, to issue to the said plaintiff a commission as member of the state board of horticultural inspection.

As suggested by able counsel, who, upon the hearing of this case in the supreme court, appeared on behalf of the honorable Secretary of State, two questions are submitted, answers to which will be decisive of this case.

''1. Is it competent for the legislature to provide that the State Horticultural Association shall have the right or authority to present or recommend to the Governor a list of names from which he must appoint the members of the state board of horticultural inspection?

''2. If the legislature has authority so to provide, has it done so by the language used in sec. 1310 of the Revised Codes of Idaho, as amended by sec. 1 of chapter 58, Laws of 1911?''

We will consider these questions in the order in which they are stated.

Sec. 1, art. 2, of the constitution, provides that ''The powers of the government of this state are divided into three distinct departments: the legislative, executive, and judicial, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others,

except as in this constitution expressly directed or permitted.''

Sec. 6 of art. 4, provides that ''The Governor shall nominate and, by and with the consent of the Senate, appoint all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise provided for.''

Sec. 1 of art. 2, and sec. 6 of art. 4, *supra,* have been construed by the supreme court of this state in the case of *In re Inman,* 8 Ida. 398, 69 Pac. 120, and in the case of *Elliott v. McCrea,* 23 Ida. 524, 130 Pac. 785, to the effect that the legislature may create an office or offices, which may be filled by appointment either by the chief executive or by any person, board, corporation, or association of individuals, and that such appointment would not be in conflict with the constitution or an improper exercise of power properly belonging to the executive department of the state government, and as stated by this court in the case of *Elliott v. McCrea, supra,* the constitution itself provides the method of selection of legislative, executive and judicial officers named in the constitution.

The framers of the constitution could not foresee what offices might be created by laws subsequently enacted, and so they provided that such offices should be filled by the Governor unless the appointment or election should be otherwise provided for. The legislature, in enacting the statute in question, has exercised its constitutional right in naming and designating the officer or officers who shall make these particular appointments.

House Bill No. 92, passed by the twelfth session of the legislature and approved Feb. 21, 1913, entitled ''An act to provide for the establishment of drainage districts, and the construction and maintenance of a system of drainage, . . . . '' authorizing the district judge of a judicial district in which a drainage district is located to appoint the drainage commissioner for the district, was held not to be in violation of the constitutional provisions, *supra,* and was not an infringement by the judicial department of the state government upon the functions of the executive branch of the government.

The rule would seem to be that in passing upon the constitutionality of statutes generally, no matter from what standpoint the assault thereon may be made, it is well settled that nothing but a clear violation of the constitution will justify the courts in overruling the legislative will, and where there is reasonable doubt as to the constitutionality of an act, it must be resolved in favor of the act.

Primarily the rule is well settled by numerous authorities that in the absence of a constitutional provision to the contrary, any one of the three departments of government may, under the authority of the statute, appoint for any class of office in any of the three governmental departments. (*People v. Hoffman,* 116 Ill. 587, 56 Am. Rep. 793, 5 N. E. 596, 8 N. E. 788; *Eddy v. Kincaid,* 28 Or. 537, 41 Pac. 156, 655; *State v. George,* 22 Or. 142, 29 Am. St. 586, 29 Pac. 356, 16 L. R. A. 737; *Evansville v. State,* 118 Ind. 426, 21 N. E. 267, 4 L. R. A. 93; *Davis v. State,* 68 Ala. 58, 44 Am. Rep. 128.)

A state legislative body existing by virtue of a constitutional provision has power to enact any laws that are not expressly, or by necessary implication, prohibited either by the federal constitution or by the constitution of the state. (*Lowry v. Gridley,* 30 Conn. 450; *Commonwealth v. Plaisted,* 148 Mass. 375, 12 Am. St. 566, 19 N. E. 224, 2 L. R. A. 142; *Commonwealth v. Moir,* 199 Pa. St. 534, 85 Am. St. 801, 49 Atl. 531, 53 L. R. A. 837; *State v. Cherry,* 22 Utah; 1, 60 Pac. 1103; *Kimball v. Grantsville,* 19 Utah, 368, 57 Pac. 1, 45 L. R. A. 628.)

The power to create an office, unless otherwise provided by the constitution, is vested in the legislative department of the government. The method of filling the office is to be determined by the legislature in the absence of constitutional provisions. (*United States v. Maurice,* 2 Brock. 96, 26 Fed. Cas. No. 15,747; *People v. Lindsley,* 37 Colo. 476, 86 Pac. 352; *State v. Bryan,* 50 Fla. 293, 39 So. 929.)

The power of the legislature to pass laws regulating appointments to statutory offices is absolute unless restrained by some constitutional provision. (See *State v. Covington,* 29 Ohio St. 102, and authorities there cited; *French v. State,* 141

Ind. 618, 41 N. E. 2, 29 L. R. A. 113; *Sun Printing Assn. v. New York,* 8 App. Div. 230, 40 N. Y. Supp. 607; *Cherry v. Burns,* 124 N. C. 761, 33 S. E. 136.)

Sec. 6 of art. 4, of the constitution, provides: "The Governor shall nominate and, by and with the consent of the Senate, appoint all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise provided for." Under this constitutional provision, the legislature has the power to create an office and provide for the filling of the same whenever such office is not established by the constitution, and to provide for the appointment of such officer either by the chief executive or in any other manner that in the wisdom of the legislature it may deem proper, there being no inhibition in the constitution as to the creation of other offices than those named therein, but, on the contrary, there being an express recognition of such power in the following terms: "or which may be created by law, and whose appointment or election is not otherwise provided for." Many offices in this state have been created by law that were not provided for in the constitution, and in numerous instances the manner of their appointment has been clearly provided for by law. The chief executive in certain instances has been given the absolute power to nominate and appoint persons to fill certain offices created by the legislature. This, however, is not true in all cases. In some instances it requires the concurrence of certain state officials whose offices are provided for by the constitution, in order to make appointments by the Governor legal, in others the concurrence of the Senate, and in still others, the concurrence of a majority of certain boards.

That the legislature may limit the power of the chief executive in the matter of making appointments cannot be successfully refuted. (*State v. Boucher,* 3 N. D. 389, 56 N. W. 142, 21 L. R. A. 539.)

As held in the case of *In re Bulger* and *In re Merrill,* 45 Cal. 553, and *People v. Osborne,* 7 Colo. 605, 4 Pac. 1074, the legislature can abolish or change an office created by it. It may extend or abridge the terms of its incumbents at pleasure. It

may confer the power of appointment upon any voluntary association of persons and prescribe the method of selection of said officer by such voluntary association.

In the case of *Davis v. State,* 7 Md. 151, 61 Am. Dec. 331, it was held in effect: "When the legislature creates an office by act of assembly, it can designate by whom, and in what manner the person who is to fill the office shall be appointed. . . . . Where an office is of legislative creation, the legislature can modify, control or abolish it; and within these powers is embraced the right to change the mode of appointment to the office."

We have therefore reached the conclusion that sec. 1310, Rev. Codes, as amended, *supra,* is constitutional and not in violation of sec. 1, art. 2, and sec. 6, art. 4, of the constitution of this state, and that it was clearly within the power of the legislature to enact said statutory provision.

We now come to the consideration of the second proposition propounded, viz., has the legislature conferred upon the State Horticultural Association the power to nominate the state board of horticultural inspection, and is it incumbent upon the chief executive to appoint from the nominations so made? In order to dispose of this question it will be necessary to place a construction upon sec. 1310, Rev. Codes, as amended, *supra.* If this section authorizes the State Horticultural Association to appoint the state board of horticultural inspectors, or if said section gives to the State Horticultural Association exclusive power to nominate the members of said board and confers upon the Governor the power to appoint, making both acts concurrent in order that such appointments be legal, or if the provisions of said section were not fully complied with by the Governor, it was clearly the duty of the honorable Secretary of State to refuse to issue a commission to Daniel L. Ingard as directed by the Governor.

Where the chief executive is expressly authorized by law to determine when a vacancy exists in an office and has the exclusive power to fill the same by appointment, it is clearly the duty of the Secretary of State to issue the commission as directed by the Governor and impress the same with the great

seal of the state, but where the chief executive is clothed with no such authority and the concurrent act of an authority delegated by the legislature is necessary in order to constitute a legal appointment, the honorable Secretary of State would not be justified in violating the plain provisions of the law by issuing a commission of appointment and impressing the same with the great seal of the state to any person not authorized by law to fill the same.

If we were confronted with a provision such as we find in the session laws of 1911, page 614, "An act to provide for and regulate the examination and registration of graduate nurses," to which attention is directed merely for the purpose of comparison with sec. 1310 as amended, *supra,* in which former act we find the following provisions: "Upon taking effect of this act, the Governor shall appoint, . . . . a State Board of Examination and Registration of Graduate Nurses. . . . . The Idaho State Association of Graduate Nurses shall nominate four (4) nurses and two (2) physicians, from which list the Governor of Idaho shall appoint an Examining Board of two (2) nurses and one (1) physician";—we would experience no serious difficulty, as said statute is clear. it is mandatory, it fixes the power of nomination and appointment and limits the chief executive to the selection made by the Idaho State Association of Graduate Nurses. It is not necessary that words be added or stricken out, or that words be given any other meaning than is ordinarily understood to be the meaning intended. But this cannot be said of sec. 1310 as amended, *supra.* It is true the language used is ambiguous in some respects; however, we think it subject to a reasonable construction when considered in its entirety. The history of the statute and the acts of prior chief executives of the state in connection therewith afford us no particular aid in placing a proper interpretation upon the provisions contained in the act, so far as it relates to the appointment of the state board of horticultural inspection. In the case of *Ada County v. Boise Com. Club,* 20 Ida. 421, 118 Pac. 1086, 38 L. R. A., N. S., 101, this court held (quoting from the syllabus): "It is an elementary principle that the

neglect or failure of public officers to do and perform their duty as required by law will not estop the public or prevent any rights or acts of the state in enforcing such laws, and the failure of the public officials to collect a revenue license, where such is required by law, for a number of years, is not sufficient evidence of the intent of the legislature in passing such law to exclude from its operation persons and corporations from whom such officers have failed to collect such revenue license." The presumption is that the legislature understood the meaning of the words used in the act, and that these words and phrases would be interpreted according to the common usage and understanding of such words and phrases.

In the case of *Holmberg v. Jones*, 7 Ida. 752, 65 Pac. 563, the court said (quoting from the syllabus) : "While courts do, in order to carry out the will of the legislature, which has been expressed in an imperfect way, interpolate punctuation, or words evidently intended to be used, into a statute, yet, when the matter to be interpolated comprises the real substance of the act, the court is not authorized to make such interpolation." It would be clearly beyond the right of this court to make judicial amendments to the statute in question by adding words thereto. In our opinion, to do so, would be an unwarranted infringement upon the powers of the legislature. It might be conceded that the court was of the opinion, after a thorough consideration of sec. 1310, Rev. Codes, as amended, that the legislature intended to place upon the Governor a moral obligation to act concurrently with the State Horticultural Association in order that the members of the board appointed be proper persons; that is, that they possess the necessary qualifications, but we would not be justified in reading into the statute a mandatory provision and thus creating a legal obligation, where none existed, upon the Governor, requiring him to appoint said board from the list of names so furnished.

The chief and main purpose of sec. 1310, Rev. Codes, as amended, *supra,* is to provide a state board of horticultural inspectors and fix the method of their appointment. The

power of appointment is clearly fixed in the act, which is evident from the following language: "The state board of horticultural inspectors shall consist of five (5) members who shall be appointed by the Governor of the state      The act provides no other appointive power, and in express terms places the appointment with the Governor. That portion of the statute is entirely clear. The only limitation.attempted to be placed upon the power of the Governor to appoint is that in making said appointments, he "shall consider any recommendations made by the State Horticultural Association as the proper persons to be so appointed." The statute fails to fix the number of persons that shall be recommended, the time or place when the recommendations shall be made, the qualifications of the persons so recommended, or that the Governor shall appoint said board from those recommended.

In the case of the *State v. Paulsen,* 21 Ida. 686, 123 Pac. 588, we find the following rule of construction: "When there is a doubt in the mind of the court in regard to the proper construction of a statute, the court may resort to the title of the act in order to construe the statute and determine the intent of the legislature. But where there is no doubt in the mind of the court, the words and phrases of a statute must be construed according to the context and the approved usage of the language, as directed by the provisions of sec. 15, Rev. Codes." We have resorted to the title of the act in order to assist us in placing a proper construction upon sec. 1310, Rev. Codes, as amended, *supra,* to aid us in determining the intent of the legislature. The title of the act, however, affords us no satisfactory solution, and we are therefore compelled to construe the words and phrases of the act as directed by the provisions of sec. 15, Rev. Codes, *supra.*

The word "recommendation" is defined in the Standard Dictionary as "The act of recommending or commending a person or thing to notice, use, confidence, or civility of another; favorable representation; that which procures a favorable reception; a note commending a person to favor." The word "consider" is defined in the Standard Dictionary as

"To think deliberately about; reflect upon; give close attention to; ponder; as, consider the matter well before deciding. To regard in a certain aspect; to look upon; hold; estimate." Neither of these terms, as used in sec. 1310 as amended, *supra,* can be construed to mean that any person so recommended, favorably presented; or any person considered, deliberated about, pondered over, shall be appointed a member of the state board of horticultural inspection.

In order to construe sec. 1310, Rev. Codes, as amended, *supra,* and to hold, as contended for by counsel for defendant, that the joint act of the Governor and State Horticultural Association shall be concurrent in order to authorize the appointment of members of the state board of horticultural inspection, it would be necessary for this court to read into said section a mandatory provision, such as we have heretofore called attention to as a part of a statutory provision of a similar character, found in the 1911 Session Laws, *supra,* which, in substance, would be that the Governor, in making such appointment, shall not only consider any recommendation made by the State Horticultural Association as proper persons to be so appointed, *but shall, from the list of names so recommended, appoint said state board of horticultural inspectors.*

In the case of *In re Kane v. Gaynor,* 144 App. Div. 196, 129 N. Y. Supp. 280, the court says: "While it will not be questioned that it is within the power of the legislature in creating a new state office to confer a power of appointment on some individual or association other than a public officer or body (*Sturgis v. Spofford,* 45 N. Y. 446, 450), such a course is exceptional, and nothing will be presumed in that direction. The appointment of public officials is generally looked upon as involving the executive power. It clearly contemplates a voluntary act on the part of the appointing power (*Marbury v. Madison,* 1 Cranch, 137, 155, 2 L. ed. 60), and it is impossible to dissociate the idea of discretion from the power. To appoint without discretion would be a mere ministerial act, and entirely takes away the essential element of

an appointment, which is but a substitute for an election.
. . . .

"An election contemplates a free choice of public officers,
and an appointment, being a mere substitution for an elec-
tion, must necessarily involve the same idea, and we are not
to look to the legislature to direct anything which is incon-
sistent with this fundamental element of an appointment. If
there is anything of the kind in the statute, it should be ex-
pressed in clear and unequivocal language. We ought not
to read anything into the statute for the purpose of producing
such a result." Tried by this test, is there anything in this
statute that takes away from the chief executive of the state
the power to appoint the state board of horticultural inspect-
ors, or would we be justified in reading into this statute, and
at the same time giving to it a fair and reasonable construc-
tion, that the appointment of the state board of horticultural
inspection depends upon the concurrent act of the State Hor-
ticultural Association and the Governor of the state? Does
the act, when considered in its entirety, confer upon the State
Horticultural Association the power to nominate and impose
upon the chief executive the duty of selecting, as members of
the state board of horticultural inspection, persons so nom-
inated and none other? We think not. The language of the
section is consistent with the recommendation for appoint-
ment by the State Horticultural Association, but wholly in-
consistent in so far as it makes of the Governor the mere
ministerial officer of the State Horticultural Association.

In the case of *People v. Hunt,* 1 Ida. 433, the court held
(quoting from the syllabus): "Statutes should be so con-
strued as to give effect to each and every part thereof, if it
is possible to do so." We think that a proper construction
can be given to sec. 1310, Rev. Codes, as amended, *supra,* and
effect given to each and every provision thereof. The statute
clearly imposes two duties upon the chief executive—first, to
appoint a state board of horticultural inspectors; second,
to consider any recommendations made by the State Horti-
cultural Association as the proper persons to be so appointed.
There rests upon the horticultural association the voluntary

duty to make recommendations to the Governor of persons, who, in its judgment, are proper persons to be appointed members of said state board of horticultural inspectors. The act, neither in direct terms nor by implication, requires the Governor to appoint said board from the recommendations so made, but it does impose upon him the duty of considering any recommendations made by the State Horticultural Association, and from a reasonable construction of the statute, it is incumbent upon the Governor, not only to consider any recommendations that are made of persons recommended to be appointed by the horticultural association, but to carefully consider such person or persons so recommended before appointing the members of said board. Said association would not be limited to but one recommendation, or recommendations made at one time, but should be allowed to make any number of recommendations of proper persons to be appointed, within a reasonable time, that the evident intention of the legislature might be carried out by the joint act of the association and the Governor, and that the board would be made up of members who are learned in the science of horticulture, to the end that the horticultural interests of the state be properly protected and expanded. In our opinion, as appears from the record, the chief executive has not fully complied with sec. 1310, Rev. Codes, as amended, *supra,* in this respect. The state horticultural association should be fairly dealt with in the selection of the state board of horticultural inspectors. That association is vitally interested in the personnel of this board and has a right to be considered.

In our judgment, the writ of mandate should not issue at this time, upon the ground and for the reason that the State Horticultural Association has not had an opportunity, as contemplated under said sec. 1310, Rev. Codes, as amended, *supra,* to make recommendations of proper persons to be so appointed. This being an original proceeding in this court and the facts are undisputed, what would be a reasonable time within which to allow the state horticultural association to make recommendations is a question of law and eminently proper for this court to decide. We have reached the conclu-

sion that the state horticultural association shall be allowed sixty days from and after the handing down of this opinion in which to make any recommendations as to the proper persons to be so appointed, from which said names so recommended the Governor may appoint members of the state board of horticultural inspectors, but he is not confined, in making said appointments, to the names so recommended. At the expiration of sixty days, the Secretary of State shall issue a commission to any person or persons appointed by the Governor members of said state board of horticultural inspectors.

Morgan, J., concurs.

SULLIVAN, C. J., Concurring in Part and Dissenting in Part.—(1) I am unable to concur in the final conclusion reached by the majority of the court. I do concur, however, in the conclusion that the legislature may create an office not provided for by the constitution, and may provide for the filling of the same by appointment to be made by some person or persons other than the Governor. That is, the Governor has not the constitutional power or authority to make appointments to an office created by the legislature where the legislature has otherwise provided for such appointments.

(2) I also concur in the conclusion reached that the Secretary of State may refuse to issue a commission of appointment to certain persons appointed to office by the Governor.

(3) I cannot concur in the construction placed upon sec. 1310, Rev. Codes, as amended by Laws of 1909, p. 322, and Laws of 1911, p. 151. As I view it, the legislature has the power to authorize the appointment of the members of a board by the Governor in connection with others, and not leave the appointment entirely in the hands of the governor. That was clearly the intent and purpose of the legislature in providing for the appointment of members of the board of horticultural inspection.

That part of said sec. 310 applicable to this question is as follows:

"The state board of horticultural inspection shall consist of five (5) members; who shall be appointed by the Governor of the state, and shall hold their office for a term of two (2) years or until their successors are appointed and qualified and in making said appointments the Governor shall consider the recommendations of the 'State Horticultural Association' as the proper persons to be so appointed."

The legislative intent was to make said board as effective as possible in performing the duties imposed upon it and remove it as far as possible from politics and the mutatious whims of the Governor. To me that intent is clearly shown by the language used in that part of the section above quoted, and that language has been so construed by former Governors and the appointment of the members of said board made from those recommended by the State Horticultural Association "as the proper persons to be so appointed," ever since the passage of the first horticultural act in 1897 (Sess. Laws, p. 109). As I understand it, history shows that no Governor has refused to appoint the members of such board from those recommended by the association until the present Governor refused to do so.

Said horticultural act has been amended and changed a number of times since its first enactment. In 1899 (Sess. Laws, p. 122) said law was re-enacted without any amendments whatever. It was re-enacted with some amendments in 1903 (Sess. Laws 1903, p. 347), and the first section of that act contains, among other things, the following provision, which is substantially the same as the provision above quoted: "And in making said appointments, the Governor shall consider the recommendations of the State Horticultural Society as to the proper persons to appoint." The two *ex-officio* members of the board provided for were here changed and said two members were in the act of 1903 fixed as the Director of the Experiment Station and the Professor of Zoology of the University of Idaho. This, however, makes no change in the manner or method of appointing the three members of said board who were to be appointed.

In 1907, the legislature amended said act to some extent (Sess. Laws 1907, p. 448), and sec. 1 of the former acts was so amended that the three appointive members of the board should be appointed by the Governor, and failed to provide that said members should be appointed on the recommendation of the State Horticultural Society or Association.

The code commissioner, in preparing the Revised Codes of 1909, copied therein as sec. 1310 the provisions of the horticultural act as passed by the legislature in 1907. Those codes were adopted early in the session of 1909 and later in that session the legislature again revised the horticultural inspection act by amending sec. 1310 as it appeared in the new codes. That amendatory act is found at page 322, Sess. Laws 1909. The act of 1909 amending sec. 1310 leaves that part of said section involved in this controversy as above quoted. It does away with the *ex-officio* members of said board and provides for the appointment of the five members thereof, and also provides that "in making such appointments, the Governor shall consider the recommendations of the State Horticultural Association as the proper persons to be so appointed."

It will thus be observed that in the amendment of 1907, the words of limitation upon the appointive power of the Governor were omitted entirely and were inserted and slightly modified in the amendment of 1909, as above indicated, and restored in exactly the same language and words in which the provision first appeared in the act of 1897, except that in the amendment of 1909 the word "association" is used instead of the word "society." Under the act of 1909, for the first time in the history of the horticultural statute the entire membership of the board was made appointive. After the statute of 1907 had repealed all limitation imposed on the Governor in appointing said members, the amendment of 1909 placed the same restrictions upon him in making such appointments as were placed upon the Governor by the first horticultural act passed by the legislature of the state in 1897.

In 1911 (Sess. Laws, p. 152) said section 1310 was amended, but the sentence before us for construction was not changed in any manner.

The fact that said provision was entirely left out of the amendment of 1907, leaving the Governor to appoint without requiring him to appoint from recommendations made by the horticultural association, and then in the amendment of 1909 and 1911 said provision was included, requiring that the Governor shall consider any persons recommended by the State Horticultural Association as proper persons to be appointed on said board, is significant, to say the least, and clearly indicates to my mind that the legislative intent was to require the Governor to make such appointments from those recommended by the horticultural association, provided it made such recommendations.

It is clear to me from the purview, object and purpose of said act that the legislature considered that there was great danger to the horticultural interests of the state from the very things and diseases there sought to be checked and stamped out. The eighteenth section of said act contains the following: "Whereas there is great danger to the horticultural interests of the state of Idaho from pests and other causes for which no adequate remedy has been provided," and it is those pests and other causes that the legislature sought to have destroyed by the enactment of said law and it did not intend that appointments to said board of horticultural inspection should be made by the Governor for political or for any other purpose than that which was clearly intended by the provisions of said act. It was intended to put a check upon the Governor in that regard by requiring him to make such appointments from persons selected by the horticultural association, which association was presumed to have the horticultural interests of the state within its knowledge and comprehension more than any other men or body of men.

It is also clear to me from the provisions of said act that the legislature did not intend to place the appointment of the members of said board with the State Horticultural Association and make it their duty to *appoint,* said associa-

tion being a voluntary association of unofficial persons; but did intend to authorize said association to submit a list of names to the Governor for these appointments, should it desire to do so, which has been done since the enactment of said law. Such list of names might be equal to, greater, or even smaller, than the number of places to be filled, but if the association desired, as has been its custom, to submit a list of names of a much greater number than the number required to be appointed, as in the case at bar, where they submitted nine names where only three were to be selected, they were authorized to do so. The legislature did not desire to say that the Governor *must* make appointments from a list submitted, for the association might neglect to provide such list, and in that case the Governor was left free to make the necessary appointments without the recommendations which might not be forthcoming and which it would be difficult, if not impossible, to compel. That is, it was not intended that the association should defeat such appointments by a failure to furnish a list of names. The legislature evidently intended to leave the matter open to the Governor to make such appointments as he might desire to make in case no recommendations were made by said association.

Recurring to the language used in said sec. 1310, I think it fully justifies the conclusion just suggested; it is that "in making said appointments the Governor *shall* consider any recommendations made by the State Horticultural Association as to the proper person[s] to be so appointed."

This construction of that statute gives force and effect to the evident intent of the legislature, and is in harmony with every known rule of statutory construction applicable thereto, and would not in any manner infringe any provision of the constitution. Any other construction would render useless and meaningless the words of the statute which provide that the "Governor shall consider any recommendations made by the State Horticultural Association as the proper persons to be so appointed."

Under our form of government such associations and private persons have the right and privilege to recommend per-

sons for appointment to appointive positions without legislative authority so to do, and the appointive power is supposed to consider such recommendations. If the language quoted from said section means nothing and gives no right but that which the association already had, it certainly was a work of supererogation on the part of the legislature and adds nothing to the act. But in my view of the matter, the legislature intended something by said provision more than an attempt to confer on the horticultural association a right which it already had. The legislature provided that the Governor "shall" consider the persons so recommended by the association "as the proper persons to be appointed" to such office, and it is his bounden duty to appoint the members of said board from a list of persons recommended by such association, provided it makes recommendations. It is not to be presumed that such recommendations would not be made, as they have been so made since the passage of the first horticultural act in 1897.

If the members of this board are to be appointed because of their partisan politics and in order to reward partisan workers by the Governor, the efficiency of said department will no doubt be greatly impaired. It is clear that the legislature recognized this and intended to require the Governor to appoint the members of said board from those recommended by the State Horticultural Association and thus make effective the provisions of said act in promoting the very best interests of the fruit industry of the state in appointing competent men possessed of proper horticultural knowledge and experience. I think history shows that no Governor prior to the present one has ever ignored the recommendations of the State Horticultural Association in making such appointments, and it is the duty of this court to construe said act in accordance with the intent of the legislature, since the intent of the statute is the law, and the statute ought to be construed in accordance with such intent.

(4) The opinion of the majority concludes that although the State Horticultural Association has recommended nine

persons to the Governor for appointment to positions on said board, such association has not had a reasonable time to make such recommendations, and that the question of reasonable time is a question of law, and holds that the horticultural association shall have sixty days in which to make other recommendations, and in case the Governor refuses to appoint any persons recommended by such association, although they might recommend a thousand or more, the Governor may then appoint whom he pleases. Under that conclusion it would not surprise me in the least if the Governor should refuse to appoint every man recommended by the association, unless it should recommend the two men he has already attempted to appoint to that position, or others who would agree with the Governor that they would vote or support for the office of state horticultural inspector the person whom the Governor would suggest, since he has already attempted to appoint the plaintiff Ingard, and one Blackman, who have not been recommended by said association. Evidently the Governor not only intends to appoint the board, but intends to compel the board to permit him to appoint the state horticultural inspector, which officer, under the law, should be appointed by said board and not by the Governor.

The majority concludes that the writ of mandate ought not to issue for sixty days. I concur with them so far as the sixty days is concerned, but in my view of the matter the writ should not issue at all. The majority opinion holds that it is beyond the authority of this court to make judicial amendments to said sec. 1310. I concur in that view of the matter, but the difficulty is, the majority opinion, as I understand it, proceeds to amend said section by adding something thereto that is not contained in the section, and fails to construe said section in accordance with the clear intent of the legislature. The Governor not only violates the clear intent of the act by refusing to appoint those recommended, but violates another intent, namely, that of taking said appointments out of partisan politics, and proceeds to appoint three of his partisans, two of whom were not recommended by said association.

The writ should be denied.