[Civil No. 1525.  Filed April 18, 1917.]

[164 Pac. 447.]

MARK DUNBAR, Appellant, v. CON P. CRONIN, Appellee.

1. CONSTITUTIONAL LAW—STATES—LEGISLATIVE POWERS—APPOINTMENT OF OFFICERS.—Acts of 1915, chapter 62, section 1, establishes a state library to be under the control of a board of curators to be appointed by the Governor, etc.  Section 2 gives such boards full control and management of the library, and authority to appoint a law and legislative reference librarian, who shall hold office at the pleasure of the board, provided, however, that the board of curators are not empowered to appoint such librarian during incumbency of office of the librarian provided in section 3.  Section 3 appoints the defendant the law and legislative reference librarian, and provides that he shall serve until his successor is appointed, unless otherwise provided by law.  Sections 4–6 and 8 recite the duties of the librarian and the assistance he shall give to heads of departments and to the legislature in preparing laws, etc.  Constitution, article 5, section 8, provides that if a vacancy in any office occurs from any cause, and no mode of filing it is pointed out either by the Constitution or by statute, the Governor of the state is empowered to fill the vacancy by appointment.  Article 4, section 8, grants the

legislative department the power to appoint its own officers. Constitution, article 6, sections 14, 17, grants to the Supreme Court authority to appoint a reporter of decisions and clerk of court. Article 11, section 3, provides for the appointment of three members of the state board of education. Section 5 provides for the appointment of regents of the University and governing boards of other state institutions. Article 22, section 18, provides for the appointment of a state examiner. Article 7, section 9, provides for an advisory vote of the people for United States senator. *Held,* that as the power of appointment is primarily in the people, and as section 8 inferentially imposes the duty upon the legislature in all cases where the Constitution does not provide for the filling of vacancies by provisions for filling them, the act creating the office of law and legislative reference librarian, and appointing the defendant thereto, does not violate any provision of the Constitution of the state either directly or by implication.

2. STATES — LEGISLATIVE POWERS — APPOINTMENT OF OFFICERS.—Acts of 1915, chapter 62, creating the office of law and legislative reference librarian, and appointing defendant thereto, if not a proper exercise of the power of the legislature to appoint officers in the absence of a provision in the Constitution for their appointment, was an exercise of its power to appoint its own officers, which, since the office is peculiarly identified or associated with the appointing power, as where it has to do with the functions and duties of the appointing power, whether it be judicial, legislative or executive, the appointment properly belongs to that department.

3. STATES — OFFICERS — APPOINTMENT — CONSTITUTIONAL PROVISIONS.— Constitution, article 4, section 1, subdivision 3, provides that laws other than emergency measures do not become operative for ninety days after close of the session of the legislature enacting the measure. Constitution, article 5, section 7, provides that if any bill be not returned within 5 days after it shall have been presented to the Governor, such bill shall become a law in a like manner as if signed by the Governor, unless the legislature by final adjournment prevents its return, in which case it shall be filed with his objections in the office of the Secretary of the State within ten days after such adjournment, or become the law as provided in this Constitution. Acts of 1915, chapter 62, was not approved by the Governor, and not vetoed, and the Governor did not file any objections to the same within ten days after the final adjournment of the session on March 11, 1915. Defendant's official bond was executed and presented to the board of curators on April 2, 1915, and approved on the same day, and on the same day his bond, together with his oath of office, was filed with the Secretary of State. *Held,* that as chapter 62 was a law on March 24, 1915, although it did not become operative until ninety days thereafter, the power of the legis-

lature to make the appointment being determined, the exercise of such power in advance of the law becoming operative was valid.

4. STATES—OFFICERS—QUALIFICATION.—As Laws of 1915, chapter 62, although a law on March 24, 1915, did not become operative until ninety days thereafter, the board of curators appointed under the provisions of Civil Code of 1913, paragraph 4554, had not been superseded or displaced on April 2d, and had authority on that date to approve defendant's bond as legislative law and reference librarian under chapter 62.

[As to whether power to appoint officers is essentially an executive function, see note in 13 Am. St. Rep. 125.]

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Messrs. Kibbey, Bennett & Curtis, for Appellant.

Mr. G. P. Bullard, for Appellee.

ROSS, J.—This is an action in the nature of a writ of *quo warranto* brought to try the title to the office of state law and legislative reference librarian. The plaintiff-appellant claims title through appointment by the board of curators of the state library, and the defendant-appellee claims title by legislative appointment. A demurrer to the plaintiff-appellant's complaint was sustained by the trial court, and, he refusing and declining to amend his complaint, judgment was entered in favor of defendant-appellee, from which judgment this appeal is prosecuted.

Both the appellant and appellee claim title to the office by virtue of the provisions of chapter 62, entitled "An act establishing a state library, with a law and legislative reference bureau, providing for the appointment of a board of curators and librarian, defining their duties and making an appropriation therefor," passed at the second regular session of the legislature, effective June 10, 1915. That act, or so much thereof as we deem important and material to the decision of this case, we here set forth:

"Section 1. A state library is hereby established to be located at the state capitol, to be under the control and direction of a board of curators, consisting of three (3) members, to be appointed by the Governor, by and with the advice and consent of the Senate. They shall be so appointed that the

term of one member shall expire January 1, 1917, one January 1, 1919, and one January 1, 1921. The successor of the first appointed member of the board of curators whose term expires January 1, 1917, and all subsequent incumbents of the said office, shall serve for six years, or until their successors are duly appointed and qualify.

"Sec. 2. The board of curators shall have full control and management of the library and all its departments and shall provide rules and regulations for the government thereof; shall elect a chairman who shall preside at all meetings and shall appoint a law and legislative reference librarian who shall act as secretary of the said board and hold office at the pleasure of the board: Provided, however, that said board of curators are not empowered to appoint said legislative reference librarian during the incumbency in office of the said librarian as provided in section 3 of this act.

"Sec. 3. Until otherwise provided by law Con P. Cronin is appointed legislative reference librarian, and shall serve until his successor is appointed. Any vacancy shall be filled by the board of curators.

"Sec. 4. There shall be maintained in the state library a legislative reference bureau for the use and information of the members of the Legislature, the heads of the several departments of state government, and such citizens of the state as may desire to consult the same.

"Sec. 5. The librarian shall prepare, and have available for use, check-lists and catalogues of Arizona law, and all the current legislation of Arizona and other states; lists of bills and resolutions presented in either branch of the Legislature; check-lists of the public documents of the state, including all reports issued by the several departments, boards and commission; digests of such public law of this and other states as may be the best made available for legislative use; catalogues, files and clippings of newspapers, and of such other printed matter as may be proper for the use of the bureau. The librarian shall also, when requested by the Governor, heads of departments, or members of the Legislature, promptly procure available information, not on file in the bureau relating to pending legislation, and investigate the manner in which laws have operated in other states.

"Sec. 6. It shall be the duty of the librarian:

"(a) To keep and maintain at all times, in duplicate, a loose leaf set of statutes, including all sections in force, arranged numerically, and in connection with each section, subsection or paragraph of a subsection to designate the titles and subtitles, under which the same is indexed, and to keep an alphabetical card index of all such titles and subtitles referring to such section, subsection or paragraph.

"(b) To keep and maintain, in duplicate, a loose leaf ledger of notes of court decisions and other matters, referring to any section, subsection or paragraph of the statutes, arranged numerically.

"(c) To supervise and attend to the preparation, printing and binding of a complete compilation of the statutes and index, or the statutes, index and notes whenever ordered by the Legislature.

"(d) To supervise and attend to the preparation, printing and binding of such compilations of the particular sections or portions of the statutes as may be ordered by the head of any department of the state.

"(e) To formulate and prepare a definite plan for the order, classification, arrangement, indexing, printing and binding of the statutes and session laws, and between and during sessions of the Legislature to prepare and at the beginning of each session thereof to present to the committee of revision of each house, in such bill or bills as may be thought best, such consolidations, revisions or other matters relating to the statutes, or any portion thereof, as can be completed from time to time. . . .

"Sec. 8.   The librarian shall neither oppose nor urge legislation, but shall, upon request, aid and assist the members of the Legislature, the Governor, and the heads of departments by advising as to bills and resolutions and drafting the same into proper form, and by furnishing to them the fullest information upon all matters in the scope of the bureau relating to their public duties.   No employees of the bureau shall reveal to any person outside of the bureau the contents or nature of any matter not yet published, except with the consent of the person bringing such matters before the bureau. . . . ''

If the legislature had the power to do so, it is very plain that it has appointed the appellee the law and legislative

reference librarian "until otherwise provided by law," and it has, by express language, deprived the board of curators of the power "to appoint said legislative reference librarian during the incumbency in office" of the appellee.

As to the intent of the legislature in this matter there is no room for controversy. To say that the legislature meant something else is to indict it of saying one thing and meaning another. The appellee's tenure of office, under the terms of this act, is determinable only by death, resignation, failure to perform the duties of the office, or willful misconduct therein, or by the legislature. In any event the board of curators cannot remove the legislative appointee.

"It is beyond question the duty of courts in construing statutes to give effect to the intent of the law-making power, and seek for that intent in every legitimate way. But . . . first of all in the words and language employed; and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation." Section 366, Sutherland on Statutory Construction.

Indeed the appellant and appellee are in agreement as to the meaning intended by the legislature, for the appellant in his brief says:

" . . . The legislature provides that the board shall not exercise its power of appointment during the incumbency of an appointee of the legislature thereafter named."

If other proof than the very plain language used in making the appointment of appellee were needed, it might be mentioned that the legislature, convened in January, 1917, passed an act appropriating the sum of $500 to pay the expenses incurred by appellee in defending his title to the office of librarian in this very suit. This not only evidences the intention of the members of the legislature that he should not be removed by the board of curators, but it also may be considered as an expression of appreciation of the legislature of benefits secured to it through the legislative bureau. The learned counsel for the appellant, however, does not question the intention of the legislature to appoint the appellee to the office of state law and legislative reference librarian, and

that his tenure should continue "until otherwise provided by law"; his principal contention being that the appointment "is invalid and ineffective for the reason that the appointment to an administrative office is not within the legislative power under the Constitution of the state." He makes other objections to the appointment, which we shall notice later on, but this is the principal one and the one toward which most of his very learned brief and argument are directed.

The appellant bases his contention that the legislature is without power to appoint a librarian upon article III of the Constitution, which divides the powers of government into three departments, and declares that these departments shall be separate and distinct, and that no one of them shall exercise the powers properly belonging to either of the others. It is argued that an appointment to office is an executive function, and therefore properly belongs to the executive department. This position is a direct challenge of the constitutionality of the appointment by the legislature. The matter of declaring this act unconstitutional is a very serious one, and not lightly to be considered. It is well settled that every reasonable presumption in favor of the validity of the appointment is to be indulged by the courts. If there is any doubt, it has to be resolved in favor of its constitutionality.

What the courts have laid down as the rule in considering and passing upon the constitutionality of a law, involving, as it does, the question of power, applies here with all propriety, for in this case there is a direct challenge of the power of the legislature to make the appointment under our Constitution. We should approach this question, therefore, with the same trepidation as if it involved the constitutionality of the very law creating the office of librarian. It involves the review by the judicial department of the action of another separate, independent and co-ordinate department. The duties of the court, when confronted with such questions, are well set out in *State* v. *District of Narragansett,* 16 R. I. 424, 3 L. R. A. 295–298, 16 Atl. 901, as follows:

"The question of constitutionality is distinct from the question whether a statute, in its operation as a law, is likely to work well or ill, the latter question being a purely legislative question with which the courts have no concern. The

courts concede to state legislature a legislative power which is limited only by the Constitution, and they are therefore careful not to declare a statute unconstitutional until they are clear that it is so. They assume that the legislators, being bound by their oaths to support the Constitution, consider, when any act is proposed for passage, whether it can be constitutionally passed, and do not vote for the passage of it until every doubt has been quieted. In this view, a becoming deference to the legislature inculcates caution. 'The question whether a law be void for its repugnancy to the Constitution,' says Chief Justice MARSHALL, 'is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case.' *Fletcher* v. *Peck,* 6 Cranch, (10 U. S.) 87, 128, 3 L. Ed. 162. The rule generally laid down is that statutes should be sustained, unless their unconstitutionality is clear beyond a reasonable doubt. A reasonable doubt is to be resolved in favor of the legislative action, and the act sustained. Cooley, Const. Lim. 182, and cases cited. 'Before an act is declared to be unconstitutional it should clearly appear that it cannot be supported by any reasonable intendment or allowable presumption.' *People* v. *Orange Co.,* 17 N. Y. 235, 241. 'All intendments favor constitutionality.' *Crowley* v. *State,* 11 Or. 512 [6 Pac. 70]. 'Courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light on the subject, and never declare a statute void unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt.' *Re Wellington,* 16 Pick. [Mass.] 87, 95 [26 Am. Dec. 631], per Shaw, C. J. 'It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed,' says Justice WASHINGTON, 'to presume in favor of its validity, until its violation of the Constitution is proved beyond all reasonable doubt.' *Ogden* v. *Saunders,* 12 Wheat. (25 U. S.) 213, 270, 6 L. Ed. 606.''

See, also, *Laird* v. *Sims,* 16 Ariz. 521, L. R. A. 1915F, 519, 147 Pac. 741; *Gherna* v. *State,* 16 Ariz. 344, Ann. Cas. 1916D, 94, 146 Pac. 494.

Another and cognate proposition of law which we think is universally recognized as correct is this:

"The law-making power of the legislature of a state is subject only to the limitations provided in the state and federal Constitutions; and no duly enacted statute should be judicially declared to be inoperative on the ground that it violates organic law, unless it clearly appears beyond all reasonable doubt that under any rational view that may be taken of the statute, it is in positive conflict with some identical or designated provision of constitutional law. See *State ex rel. Van Alstine* v. *Frear,* 142 Wis. 320, 20 Ann. Cas. 633, 125 N. W. 961; *Wooten* v. *State,* 24 Fla. 335, 1 L. R. A. 819, 5 South. 39; *Duvall County* v. *Jacksonville,* 36 Fla. 196, 29 L. R. A. 416, 18 South. 339." *Jacksonville* v. *Bowden,* 67 Fla. 181, Ann. Cas. 1915D, 99, L. R. A. 1916D, 913–917, 64 South. 769.

See, also, *Avery* v. *Pima County,* 7 Ariz. 26, 60 Pac. 702.

All powers of government primarily are lodged in the people. That is true with reference to the selection of their officers. They may, if they so choose, surrender this power to one department of state or some portion of it to each department of state, or they may retain it to be exercised directly by themselves. The legislative department is granted the power under the Constitution (article 4, § 8) to appoint its own officers. The judicial department (Supreme Court) may appoint a reporter for the decisions of that court and a clerk of the court. Article 6, §§ 14 and 17.

The people have reserved to themselves the right to choose all precinct, county and state officers provided for in the Constitution, except three members of the state board of education (article 11, § 3), regents of the university and the governing boards of other state educational institutions (article 11, § 5), and a state examiner (article 22, § 18). Indeed, they were so jealous of this power and right to select their own officers that they provided for an advisory vote of the people for United States senator (article 7, § 9) quite a while before the federal Constitution was amended providing for the election of United States senators by popular vote.

The only instances under the Constitution in which the power of appointment is made exclusively executive are the specific ones above enumerated, and such others as may occur when an office becomes vacant and the law or the Constitution has provided no mode for filling such vacancy. If a

vacancy in any office occurs from any cause, and no mode of filling it is pointed out either by the Constitution or by statute, the Governor of the state is empowered to fill the vacancy by appointment. Section 8, article 5, of the Constitution. This section inferentially imposes the duty upon the legislature in all cases where the Constitution has not provided for the filling of vacancies or making provisions for filling them. The legislature may not only provide a mode for filling a vacancy in office, but it may create offices when not prohibited by the Constitution and provide for the election of the officers by the people or for their appointment by a board of commission of their creation, or by the executive, or may itself make the appointment.

We think it is quite apparent that the framers of our Constitution and the people who adopted it treated and considered the right to select and choose their officers as a political question, and surrendered that right to the different departments of state only in so far as the inherent necessities and proprieties seemed to require it. Where the people have not provided for the manner of filling offices newly created, or vacancies in office, they have left to the legislature, as their representatives, such duties. The rule, as we understand it, is as stated by Chief Justice KANE in *Riley* v. *State,* 43 Okl. 65, 141 Pac. 264:

"Generally the power to select officers of the state is not an exclusive function of either the executive, legislative or judicial branches. Primarily, the power resides in the people, and they alone are authorized to say by what instrumentality the power may be exercised. *In re Decision of Justices, Election by Senate* (R. I.), 69 Atl. 555."

Or as stated in the Rhode Island case, wherein it was contended that the power of appointment to office was the exclusive function of the executive branch of the government:

"It is not so prescribed or treated by the Constitution; nor is it the general practice of this or the other states of the Union so to consider it. The power of selection of the officers of the commonwealth resides originally in the people. They may provide, by the Constitution which they adopt, how the power shall be exercised, or they may leave to the legislature, as their representatives, to provide by law for the selection of such officers, by such instrumentality and in such manner

as in their opinion will secure the best service to the public.
*The power of appointment or selection to office is a function
of either the executive, legislative, or judicial branch only
when it is made so by law."* (Italics ours.)

The courts that have adopted the views expressed above,
although not always using the same reasoning, are the follow-
ing: *Fox* v. *McDonald*, 101 Ala. 51, 46 Am. St. Rep. 98, 21
L. R. A. 529, 13 South. 416; *People* v. *Freeman*, 80 Cal. 233,
13 Am. St. Rep. 122, 22 Pac. 173; *Ex parte Gerino*, 143 Cal.
412, 66 L. R. A. 249, 77 Pac. 166; *Americus* v. *Perry*, 114 Ga.
871, 57 L. R. A. 230, 40 S. E. 1004; *Hovey* v. *State*, 119 Ind.
395, 21 N. E. 21; *Ingard* v. *Barker*, 27 Idaho, 124, 147 Pac.
293; *Sinking Fund Commrs.* v. *George*, 104 Ky. 260, 84 Am.
St. Rep. 454, 47 S. W. 779; *People* v. *Hurlbut*, 24 Mich. 44,
9 Am. Rep. 103; *Attorney General* v. *Bolger*, 128 Mich. 355,
87 N. W. 366; *State* v. *Irwin*, 5 Nev. 111; *State ex rel. Rosen-
stock* v. *Swift*, 11 Nev. 128; *Rogers* v. *Buffalo*, 123 N. Y. 173,
9 L. R. A. 579, 25 N. E. 274; *People* v. *Bennett*, 54 Barb.
(N. Y.) 481; *Sturgis* v. *Spofford*, 45 N. Y. 446; *Cherry* v.
*Burns*, 124 N. C. 761, 33 S. E. 136; *Cunningham* v. *Sprinkle*,
124 N. C. 638, 33 S. E. 138; *State* v. *Seymour*, 35 N. J. L.
54; *State* v. *George*, 22 Or. 142, 29 Am. St. Rep. 586, 16
L. R. A. 737, 29 Pac. 356; *Biggs* v. *McBride*, 17 Or. 640, 5
L. R. A. 115, 21 Pac. 878.

In the note by the editor, Mr. Freeman, in the case of
*People* v. *Freeman*, 80 Cal. 233, 13 Am. St. Rep. 122, 22 Pac.
173, in which he reviews many of the decisions of supreme
courts, it is said:

"The truth is, that the power of appointing or electing to
office does not necessarily and ordinarily belong to either the
legislative, the executive, or the judicial department. It is
commonly exercised by the people, but the legislature may,
as the law-making power, when not restrained by the Con-
stitution, provide for its exercise by either department of the
government, or by any person or association of persons whom
it may . . . designate for that purpose. It is an executive
function when the law has committed it to the executive, a
legislative function when the law has committed it to the
legislature, and a judicial function, or at least a function of
a judge, when the law has committed it to any member or
members of the judiciary. The legislature, unless inhibited

by the Constitution, may exercise its power in either of three modes: (1) It may, by a statute, create an office, and name persons who are to fill it. *State* v. *Seymour,* 35 N. J. Law, 48; *Daley* v. *City of St. Paul,* 7 Minn. 390 (Gil. 311); *Mayor of Baltimore* v. *State,* 15 Md. 376 [74 Am. Dec. 572]. (2) It may by law create an office and provide that it shall be filled by election or appointment by the legislature in joint convention assembled. *People* v. *Langdon,* 8 Cal. 1; *People* v. *Fitch,* 1 Cal. 536; and the principal case. (3) It may, after creating an office, provide that it may be filled by appointment made by any person, or by the members of a voluntary association, as by the members of the Chamber of Commerce and the presidents and vice-presidents of the marine insurance companies of a certain city, or by the members of the board of underwriters of such city; nor is it necessary that the persons thus designated be citizens of the United States and authorized to vote as such. *Sturgis* v. *Spofford,* 45 N. Y. 446; *In re Bulger,* 45 Cal. 556.''

The appellant contends that the appointment of appellee directly by the legislature in the act creating the office of librarian is the exercise of a power prohibited by the Constitution. He relies upon the appointment made by the board of curators, an administrative or executive body. The board of curators is a creature of the legislature. The contention of appellant amounts to this: That the legislature may not itself appoint a librarian, but may create a board and delegate to it the power to appoint. Generally speaking, whatever a principal may do he may cause to be done through his agent or representative. Surely an agent or representative, whose power to act is delegated to him by the principal, cannot do what the principal is forbidden to do. It would seem that if the board of curators, a body that has existence by reason of the legislative act, may lawfully make the appointment the legislature itself has the right and power to make it. This proposition is correct in theory, and finds support in the decided cases. A review of the cases bearing upon the subject would seem to indicate a consensus of opinion that where the office is peculiarly identified or associated with the appointing power, as where it has to do with the functions and duties of the appointive power, whether it be judicial, legislative or executive, the appointment properly belongs to that department.

The title of the office here in question is "law and legislative reference librarian." Section 2. Later in the same section and in section 3 the officer is referred to as "legislative reference librarian." In section 4 it is provided that "a legislative reference bureau for the use and information of the members of the legislature . . . " shall be maintained in the state library. Thereafter the duties of the librarian are set forth many of which consist in the assembling and collecting of laws and data necessary and suitable to the uses of, and in aid of, the members of the legislature. It is made his duty to revise and codify any bills to be presented to the legislature for the consideration of its members. "Upon request" he is required to "aid and assist the members of the legislature," and to give advice and draft bills for the heads of departments of the state. In his message of February 3, 1913, to the legislature, the Governor of the state, in speaking of the necessity of the establishment of a legislative reference bureau, among other things, said:

"It will save the time of the legislators, provide them with a fund of information they cannot otherwise acquire, make for better, more workable and more uniform laws, prevent conflicts and repetitions, and keep the state in the forefront of progressive legislation."

Thus it would seem that the primary and dominating purpose of creating a legislative reference bureau was to give aid and assistance to the members of the legislature as lawmakers of the state. The librarian in the performance of these special duties is in the employment of the legislature as much so as any of the other numerous attachés of that department. His work differs from the other employees of the legislature in that their labors are limited to the time that the legislature is actually in session, whereas the librarian is employed not only during the sessions of the legislature, but during its vacation. His work in connection with the reference bureau is characteristically of a legislative nature, and appertains to the legislative department. In that view of it the office is a legislative one, and not an executive one, and if the power of appointment depended upon that fact (which we do not concede), the legislature was not only the proper authority to make the appointment, but it alone could make it.

The view that appointment to office is purely an executive

function to be exercised only by the executive department of government is taken by only two states, so far as we have been able to discover. *Pratt* v. *Breckinridge,* 112 Ky. 12, 65 S. W. 136, 66 S. W. 405; *State* v. *Washburn,* 167 Mo. 680, 90 Am. St. Rep. 430, 67 S. W. 592. However, in the Kentucky case the court expressly excepts from the executive department the appointment of the state librarian. It said:

"It is not denied that the legislative department can appoint or elect an officer when the duties of the office appertain to that department. And in this is found whatever justification exists for the legislature's election of the state librarian—an office which, without any violent stretch of construction, may be considered as appertaining to the legislative department."

See, also, *Sinking Fund Commrs.* v. *George, supra.*

In the Missouri case it is said: "Courts and the General Assembly may appoint such officers or agencies as are necesary to the exercise of their own functions"—a statement implying authority in the legislature to appoint a legislative reference librarian.

Ohio, North Carolina and Nebraska have constitutional provisions that prohibit the legislature from exercising the appointive power, and the decisions in those courts can have no weight upon the question. *State* v. *Kennon,* 7 Ohio St. 546; *State* v. *Stanley,* 66 N. C. 59, 8 Am. Rep. 488; *State* v. *Offill,* 74 Neb. 670, 105 N. W. 1099. Later an amendment of the North Carolina Constitution omitted the prohibition against the legislature making appointments to office, and under the amended Constitution the courts of that state have decided that the function of appointment to office might be exercised by the General Assembly. *Cherry* v. *Burns,* 124 N. C. 761, 33 S. E. 136; *Cunningham* v. *Sprinkle,* 124 N. C. 638, 33 S. E. 138.

The decisions of the courts of Indiana may be said not to be authority for either side of the proposition, for they have decided it both ways. An examination of the cases makes it evident that the decisions were more or less influenced by the peculiar wording of the Constitution of the state. In one case (*State* v. *Denny,* 118 Ind. 382, 4 L. R. A. 79, 21 N. E. 252) it is said.

"The legislature of our state is prohibited from appointing to office except as in the Constitution expressly provided."

There is no such limitation upon the legislative power in our Constitution. The Denny case, while denying the right of the legislature to appoint officers for the city of Indianapolis, suggests that it could rightfully exercise the power to appoint a state librarian. This case was followed by *City of Evansville* v. *State,* 118 Ind. 427, 4 L. R. A. 93, 21 N. E. 267, *State* v. *Hyde,* 121 Ind. 20, 22 N. E. 644, and *State* v. *Peelle,* 121 Ind. 495, 22 N. E. 654. By that same court the right of the legislature to appoint to office has been directly recognized. *Hovey* v. *State,* 119 Ind. 395, 21 N. E. 21; *French* v. *State,* 141 Ind. 618, 29 L. R. A. 113, 41 N. E. 2; *Overshiner* v. *State,* 156 Ind. 187, 83 Am. St. Rep. 187, 51 L. R. A. 748, 59 N. E. 468. We hold, therefore, following the great body of American law on that subject, that the act of the legislature creating the office of state law and legislative reference librarian, and appointing the appellee thereto, does not violate any provision of the Constitution of the state; that there is no limitation in that instrument in direct terms or by implication upon the legislative power to do what is done in this act.

We might add that if we were inclined to adopt the reasoning of the courts of Kentucky and Missouri, still, under their reasoning, the duties and functions of the librarian appertaining largely to the law-making department, appellee's appointment by the legislature would be authorized.

The act appointing appellee to the office of state law and legislative reference librarian became a law on the twenty-fourth day of March, 1915. It was not an emergency measure, and therefore, under article 4, subdivision 3 of section 1 of the Constitution, did not become "operative for ninety days after the close of the session of the legislature enacting such measure."

The appellee's official bond was executed and presented to the board of curators for their approval on April 2, 1915, and by them approved on that day. On the same day his bond, together with his oath of office, was filed with the Secretary of State. It is objected by the appellant that all these proceedings were premature and of no legal effect. His position is that the bond should have been approved and the oath of office taken after the tenth day of June, the day that the law became operative; that prior to that time there was no

board of curators to approve his official bond, nor any office of librarian in existence. This bill was not approved by the Governor, neither was it vetoed. The legislature, by its final adjournment, prevented its return to it, and the Governor, failing to file any objections to the same within ten days after such adjournment, Sundays excepted, as provided in the Constitution (article 5, § 7), we think the act creating the office was a law from and after the tenth day from the date of adjournment of the legislature, but inoperative as such until ninety days thereafter. The power of the legislature to make the appointment being determined, we can see no objection to its exercise in advance of the law becoming operative. *People* v. *Inglis,* 161 Ill. 256, 43 N. E. 1103; *State* v. *Irwin,* 5 Nev. 111; *People* v. *Blanding,* 63 Cal. 333; Mechem on Public Officers, § 133.

Appellee's bond was presented to and approved by the board of curators appointed under the provisions of section 4554, chapter 9, title 42, of the Civil Code of 1913, which board had not been superseded or displaced on April 2, 1915, when appellee's bond was approved.

The judgment of the lower court is affirmed.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J. (Dissenting).—This is an action in *quo warranto,* commenced by the appellant against the appellee to try the title to the office of law and legislative reference librarian. The office was created by an act, published as chapter 62, Regular Session of the Second State Legislature 1915, p. 134. The plaintiff was in form appointed to the office of said law and legislative reference librarian by the board of curators of the state library, at a regular meeting of the board on July 23, 1915. He qualified on July 24, 1915. He claims title to the office by reason of such appointment, and claims that the board in making the appointment acted within its authority conferred by section 2 of said chapter 62. Plaintiff demands the usual judgment of ouster and general relief.

The defendant demurs upon the grounds that insufficient facts are stated in the complaint to justify the relief demanded, or to state a cause of action. He demurred specially

denying the power of the board of curators to make the appointment of a librarian, because at the time the appointment was attempted to be made, the said office was not vacant, but at said time this defendant alleges that he (defendant) was and still is "the lawful and legal incumbent of said office, . . . never having been removed therefrom by operation of law or otherwise," and as a consequence the attempted appointment of the plaintiff by the said board of curators was "illegal, unlawful, and unauthorized by any law of the state of Arizona, and was in direct contravention and violation of the provisions of said act of the state of Arizona," referring to the act by its title. The defendant denies the alleged usurpation and intrusion into the office and his alleged unlawful holding and exercising the duties of the office, and the unlawful exclusion of plaintiff therefrom, and asserts that defendant lawfully holds the office, and lawfully excludes the plaintiff therefrom. The defendant specially sets forth his right and title to the office by alleging facts which show him eligible to hold the same. His appointment thereto is set forth as follows: "That under and by virtue of the provisions of an act of the legislature of the state of Arizona, entitled 'An act establishing a state library with a law and legislative reference bureau, providing for the appointment of a board of curators and librarian, defining their duties and making an appropriation therefor.' . . . This defendant was appointed by the legislature of the state of Arizona to the office of law and legislative reference librarian created by said act. . . . That on the 2d day of April, 1915," the defendant's official bond was approved and with his oath of office was filed. That the defendant assumed the office on the tenth day of June, 1915, and claims that he is the lawful incumbent from such date. He alleges:

"That under and by virtue of the provisions of section 3 of said act and law, . . . the term of office of this defendant extended to such time and period as might otherwise be provided by law. That subsequent to said act becoming a law there has not been, and is not now, enacted any law removing this defendant from said office of librarian created by said act. And that this defendant has never resigned from said office or been removed therefrom by operation of law, and that no vacancy has occurred in said office since defendant's appointment thereto by the legislature of the state of Arizona."

Thereby founding his title to continue in the office upon a special law enacted in his individual favor, whereby he is given the exclusive privilege of holding the same.

The plaintiff demurred specially to the portions of the answer which attack the legality of plaintiff's appointment by the board of curators, and demurs to that portion of defendant's answer setting forth defendant's appointment by the legislature, and his right thereunder to continue in office after plaintiff's appointment under such special law. The court sustained the defendant's demurrers to plaintiff's complaint, and overruled plaintiff's demurrers to defendant's answer. The plaintiff refused to amend. The court rendered judgment for the defendant, from which judgment plaintiff appeals.

The question of law presented by the record is whether on July 23, 1915, the board of curators were possessed of the power to remove the librarian then holding the office by appointment thereto by the legislature of the state, made on the face of the act creating the office of librarian, and appoint the plaintiff as the successor in office to the legislative appointee so removed. The ruling of the lower court in effect denies the power of the board of curators to remove the legislative appointee and fill the office by an appointee of the board.

The parties on this appeal have devoted much time and labor discussing the question of the power of the legislature to make the appointment of the defendant. I regard that controversy as a moot question in this case, for the reason the board of curators found the defendant in the full possession and enjoyment of the office when the board came into existence. The board did not nor could exist until chapter 62, Regular Session Laws of the Second Legislature 1915, page 134, became operative. This law became operative on June 10, 1915, and defendant assumed possession of the office on June 10, 1915. Unless the board of curators possessed the legal power to remove the person found in the actual possession of the office, exercising the duties, and to appoint another to fill such office, then the appointment by the board of the plaintiff would confer no right on the plaintiff. It is the plaintiff's individual right that is primarily involved in this action. If the defendant's possession and exercise of the office was without legal sanction, the public right is affected,

and the state is the real party in interest, but in the absence
of a legal appointment of the plaintiff, his private rights are
not affected, and he has no special interest in the matter which
would give him the right to prosecute the action. In order
that the plaintiff may prosecute this action in his own name,
he must show that he has some special interest and right,
other than the public right, which is denied him by the
defendant.

The vital question in this action is whether the board of
curators, by appointing the plaintiff, conferred upon plaintiff
a better title to the office than the defendant had by reason
of his legislative appointment. The question otherwise stated
is whether the board of curators had the power to remove the
legislative appointee on July 23, 1915, and appoint plaintiff
to the office. We must therefore search the statute (chapter
62, *supra*) and determine therefrom the powers of the board
of curators to remove a librarian found in office and to law-
fully appoint a successor. Section 1 of said chapter 62 pro-
vides for the appointment of the members of the board of
curators of the state library, and defines their respective terms
of office, and section 4 creates the legislative reference bureau.
Section 2 provides:

"The board of curators shall have full control and manage-
ment of the library and all its departments, and shall provide
rules and regulations for the government thereof; shall elect
a chairman who shall preside at all meetings and shall ap-
point a law and legislative reference librarian who shall act
as secretary of the said board and hold office at the pleasure
of the board: Provided, however, that said board of curators
are not empowered to appoint said legislative reference libra-
rian during the incumbency in office of the said librarian as
provided in section 3 of this act.

"Sec. 3. Until otherwise provided by law Con P. Cronin
is appointed legislative reference librarian, and shall serve
until his successor is appointed. Any vacancy shall be filled
by the board of curators."

The board of curators by the first portion of section 2 is
expressly commanded to appoint the librarian, and the libra-
rian so appointed by the board may hold such office only at
the pleasure of the board appointing him. The language
"shall hold office at the pleasure of the board," as used in

section 2, clearly implies that the board of curators is given the power to remove the librarian in office at any time the board may deem proper. Such expression has reference to the board's power to remove the librarian, its secretary, in the course of performing its duties of full control and management of the library in all departments. The proviso on its face purports to withhold from the board of curators some of the powers granted by the enacting portion of the section, conditionally. The implied power of removing the librarian by the board is not expressly withheld. The power of appointment is conditionally withheld, and the condition specified is that such power may not be exercised "during the incumbency in office of the" librarian appointed by the legislature, viz., Con P. Cronin. The expression, "during the incumbency in office," is certainly a most indefinite expression of a period of time. Standing alone, it places no minimum nor maximum limit of time during which the power of the board of curators to appoint a librarian is withheld. The expression is not intended as one fixing the time of the incumbency of office of Con P. Cronin, but is intended as fixing by reference to something coming after, the period of time during which the board of curators' power of appointment is suspended. That period of time, so referred to, must be determined, not from the language of the proviso making the reference, but from the language coming after to which reference is made by the language of the proviso. If upon consulting the portion of the statute to which the reference is made, a time of "incumbency in office" is fixed, then while such period endures the power of the board of curators to appoint a librarian remains suspended. Section 3 is expressly referred to as providing the period of incumbency in office during which period of time the appointive power of the board of curators remains suspended. The words "as provided in section 3 of this act" qualify the words "during the incumbency," and serve to limit the duration of the incumbency in office to the period of time such incumbency is limited by the provisions of section 3 of the act. Hence the effect of the proviso is to suspend the appointive power of the board of curators for the period of time set forth in section 3 of the act, during which the legislative appointee is granted the right to enjoy the office.

Section 3 clearly deals with three subject matters: First, with the matter of the appointment of a legislative reference librarian; second, with the matter of the duration of the term of office of the librarian appointed; and, third, with the matter of the duties of the board of curators empowering such board to fill any vacancies that may occur in any of the offices provided for the state library. Most certainly the reference made in the proviso to section 2 is to the second subject matter with which section 3 is dealing, viz., the matter of the duration of the term of office of the librarian appointed therein. In order to intelligently arrive at the period of time the person appointed by section 3 may lawfully exercise the duties of the office, we must understand the legislative intention in using the words "until otherwise provided by law." Section 3 commences with this expression. The expression is certainly qualifying in its nature. Is it a limitation upon the subject of appointment, or is it a limitation upon the subject of duration of the term of office? It is clearly not a limitation upon both subjects. If the expression qualifies the matter of appointment, then it means simply that the appointment of Con P. Cronin is made by the legislative power, in the absence of other legally constituted power, and until such time as other legally constituted power comes into existence the legislature assumes to act and does act in the premises. Consequently "Con P. Cronin is appointed," etc. I am clearly of the opinion the expression "until otherwise provided by law" has reference to any law of the state which may or may not be in contemplation of becoming effective in the future, by the provisions of which the manner and means are prescribed for the regular appointment of the law and legislative reference librarian. Consequently the expression qualifies the matter of appointment, the first subject matter treated in section 3, and has no bearing whatsoever on the second subject matter treated in the section.

The view I take of the record with regard to the matter of the appointment of the defendant by the legislature is as above stated, that it is a moot question in this case. As a consequence for the purposes of this case I regard the appointment of the defendant by the legislature as legal at the time it was made. I am therefore not concerned with the matter of defendant's appointment, the first of the subject matters

treated in section 3, but I am concerned with the question of the power of the board of curators to remove the defendant from the office to which he was appointed by the legislature. This question necessarily includes the question of the duration of the term of office of the legislative appointee, and therefore demands an inquiry into the legislative meaning of all of the language used in the statute affecting that matter. I have already considered the expression "during the incumbency in office," found in the proviso portion of section 2, and I have concluded that such expression refers to the matter of the duration of the defendant's term of office as fixed by section 3. It now remains to inquire into the question as the subject of the term of office is affected by section 3.

The only language found in section 3 in any manner bearing upon the matter of the duration of defendant's term of office is as follows: "And shall serve until his successor is appointed." This clear, plain, distinct language limiting Con P. Cronin's term of office to extend no longer than to the moment his successor is appointed cannot be misunderstood. The connection in which the limitation is used in section 3 impels such understanding of its meaning. "Con P. Cronin is appointed legislative reference librarian and shall serve until his successor is appointed," is the language used, and the connection in which the expression appears. Such language is the last, and therefore the latest expression of the legislative intent with regard to the duration of Con P. Cronin's term of office under his appointment to the office. The limitation immediately follows the granting words of appointment. They are most certainly words clearly limiting his term of office, and the limit placed on his term of office by the appointing power is, as it clearly, plainly and distinctly says, the appointment of a successor brings to a close by operation of law, the term of office granted to Con P. Cronin by the legislature.

The legislature does not expressly indicate by whom Con P. Cronin's successor may be appointed. This was unnecessary, as the members of the legislature must be presumed to have understood that the power of appointing the librarian was expressly granted to the board of curators to be exercised at the pleasure of the board. The legislature must be presumed to have also known that the law would not go into

effect for ninety days after the session finally adjourned, and that until the law did go into effect the board of curators could not be appointed, nor exercise a pleasure of appointing a secretary nor be in need of a secretary, but that other departments of the state government were in need of the services of such officer. The legislature evidently saw a necessity for the immediate need of a legislative reference librarian, and so made the appointment authorizing its appointee to perform the duties of the office until his successor is appointed by the board of curators provided by the same statute to come into existence at some future date. When the statute should become effective as a law, and thereafter, when the members of the board of curators should be appointed pursuant to such statute and qualify as such officers, electing a chairman—when all of these matters have transpired in pursuance to such act, thereupon the law provides for the appointment of a law and legislative reference librarian by the board of curators, by a designated authority other than by the legislature. Consequently, until such law is effective and in operation, by the provisions of which the board of curators is empowered to exercise its duties, and in fact exercise its pleasure in the matter of appointing a secretary, the legislature makes the appointment.

I am of the opinion that this expression, "during the incumbency in office," as used in the proviso on account of the proviso expressly referring to section 3 for information as to the meaning intended to be conveyed, means nothing more than that which is expressed in section 3 with regard to the ending of Cronin's term of office, viz., "until his successor is appointed." His successor is liable to be appointed by the board of curators at any time after the law is in operation and the pleasure of the board is exercised. No other meaning can be given the statute and retain the portion of section 2 which expressly grants to the board of curators the power to remove any librarian and appoint another at its pleasure. If the proviso takes away from section 2 these expressly granted powers, permanently, by all of the authorities the proviso is void, and the enacting portion of the statute is effective, notwithstanding the proviso to the contrary.

Another rule of statutory construction is applicable to this statute, viz.: The last expression of the legislature is control-

ling in case of irreconcilable conflict. In this case the last expression of the legislature with regard to the defendant's term of office is that he shall serve "until his successor is appointed." If the board of curators, after having been expressly empowered in section 2 to appoint a librarian, is suspended by the proviso "during the incumbency in office" of Con P. Cronin, and his term endures the remainder of his life, or until removal for cause, or until he voluntarily resigns, or until the legislature removes him, as I understand the majority of this court holds as the clear, plain, distinct language of the act, then most certainly the hand that gave to the board of curators the right to exercise its pleasure and remove the librarian, knew not what the other hand was doing, while at the same time the right given was taken away permanently. Why did the legislature grant a right to the board of curators in one breath and in the next take it away? Such a construction placed upon this statute is not a necessary construction. Another and a better construction may fairly be placed upon the statute, and thereby retain its provisions as I am constrained to believe was the legislative intent. I regard the rejection of plain statutory provisions as a dangerous and unwarranted action. Clearly, the appointment of a librarian by the board necessarily removes the then incumbent. Consequently the enacting portion of section 2 fully empowered and empowers the board of curators to remove at its pleasure any person found in possession of the office at any time, without regard to the source of such person's title to the office. The board need have no excuse for removing the person so found in office, other than its pleasure, its preference that another person fill the office. The existence of such pleasure or preference is all that is legally necessary to fully warrant the board in removing an incumbent by the appointment of his successor. The appointment of a successor by the board of curators is all sufficient to evidence the board's pleasure in this respect, and work a removal of the incumbent. The appointment by such board confers the title to the office exclusively on its appointee.

Beyond any doubt the facts stated in plaintiff's complaint, and admitted by defendant's demurrer, are sufficient to set forth a cause of action, and establish plaintiff's right to the office.

If section 3 is given a construction by which the defendant is granted the exclusive right to enjoy the office indefinitely, or until some future legislature shall see fit and proper to declare his right to the office at an end, such construction would clearly mean that the defendant holds the office by a special grant during his life; that he has conferred upon him, granted to him, the special privilege of holding this particular office for life, and is specially granted immunity of removal therefrom by any power other than the legislature enacting a special law for that purpose. Such is the effect of the defendant's contention, and if we sustain such contention, we place such an interpretation upon section 3 of this chapter as will cause such section to come into direct conflict with subdivision 13 of section 19, article 4, state Constitution, whereby the legislature is expressly prohibited from enacting any special law, "granting to any corporation, association, or individual any special or exclusive privileges, immunities, or franchises."

The appointment of an individual by name, and empowering the person so appointed to exercise the duties of a particular office named, is not such an act by the legislature as may be dignified by the term "law." But, when the legislature creates an office, and in direct connection with the law which creates the office appoints an incumbent therefor, and declares that the person so appointed shall not be removed from the office otherwise than by another act of the legislature, to be passed at some future time, most certainly the legislature has thereby granted to an individual a special privilege, and also granted to such individual immunity of removal until another special law is enacted. Such grants are nothing less than special laws, enacted in the particular case of the appointee, and are void, because prohibited. *Hunt* v. *Mohave County, ante,* p. 480, 162 Pac. 600.

Such construction as will cause the law to come into conflict with the Constitution should be rejected as beyond the legislative intent. Every law enacted must be presumed to have been enacted by the legislature with the intention that it will become operative and beneficial. Certainly the granting of an office to an individual for life is contrary to our form of state government, and such grant is a violation of the spirit, if not the letter, of our Constitution.

I am clearly of the opinion that the granted power to the board of curators to remove any law and legislative reference librarian, by whomsoever appointed, remained with the board of curators on July 23, 1915, and that the power to remove Con P. Cronin by the appointment of his successor was clearly within the power of the board of curators.

As a consequence, I dissent from the order affirming the judgment. I am of the opinion that the judgment should be reversed and the cause remanded, with instructions to overrule defendant's demurrers to plaintiff's complaint and sustain plaintiff's demurrer to defendant's answer.