LEHMAN brought quo warranto against Murphy and obtained a judgment ousting him and he brings error. By agreement of all parties the case is heard on the briefs on motion for supersedeas.
In March, 1919, Murphy was appointed by the governor with the consent of the senate as civil engineer member of the state board of land commissioners for. a term ending January 13, 1925. Colo. Const., Art. IX, sec. § 9. He served until the end of his term and until now. On the 7th of January, 1925, the senate convened and sat continuously till April 16th, when it adjourned. On said 16th day of April the governor sent the relator's name to the senate as his appointee for such office. The nomination was referred to the State Affairs Committee, and on its recommendation was indefinitely postponed for lack of time.
April 17th, by executive order, the governor appointed the relator to said office for a term to expire on the second Tuesday in January, 1931. He qualified and demanded the office but respondent refused; hence this action.
Had the governor, under these circumstances, the right to make the interim appointment? We think not.
Colorado Constitution. article IX, section 9, reads as follows: "The state board of land commissioners shall be composed of three persons to be appointed by the governor, with the consent of the senate. * * *."
Article XII, section 1: "Every person holding any civil office under the state or any municipality therein, shall, unless removed according to law, exercise the duties of such office until his successor is duly qualified; * * *." *Page 278 
Article IV, section 6: "The governor shall nominate, and by and with the consent of the senate, appoint all officers whose offices are established by this Constitution * * *. If during the recess of the senate a vacancy occur in any such office, the governor shall appoint some fit person to discharge the duties thereof until the next meeting of the senate, when he shall nominate some person to fill such office. * * *"
In Walsh v. People, 72 Colo. 406, 211 P. 646, we held that the expiration of the incumbent's term created a vacancy within the meaning of article IV, section 6, notwithstanding article XII, section 1. The claim of plaintiffs in error, therefore, that the expiration of a term of office does not create such a vacancy as will permit the governor to make a recess appointment under said section 6, cannot stand, though it is supported by powerful authority.
The additional point is made, however, that in order to give the governor such power the vacancy must "occur" during a recess of the senate. Plaintiff in error says "occur" means "arise", "take place." Defendant in error says it means "exist," "be."
In Walsh v. People, supra, the expiration of the previous term took place during a recess of the senate, so there was no question there of the meaning of the word "occur it seems, therefore, that the only question before us is: What is the sense in which that word is used in said section 6? The word carries to the mind a sense of origin, beginning, not of mere existence nor of continuation. An explosion occurs; a river is. Derivatively, too, this is its meaning (See Webster); and although it is sometimes used to carry some idea of existence yet such is not its ordinary and usual sense. One might say a session of congress occurred in 1912, but one would not say so if it began in 1911; likewise when we hear that a vacancy occurred in a recess of the senate our first thought is that it began then, not that the recess began during the vacancy. It is interesting to note that in the various *Page 279 
opinions of the courts on this subject, the writers, apparently unconsciously, often use the word occur in the sense of begin but never, we believe, in the sense of exist Why did not the constitutional convention say "if there shall be a vacancy" instead of "if a vacancy shall occur"?
The New Jersey supreme court (Fritts v. Kuhl, 51 N. J. L., 191, 198, 17 A. 102) considers the fact that the constitutional convention of that state copied the United States Constitution, an indication that they intended to adopt the construction thereof previously given by the United States Attorneys General, which was that "happen" meant "exist." If that be so, may we not say that the fact that our convention adopted different words indicates a different intention? It cannot be doubted that the able and distinguished lawyers who were members of our convention considered these matters with care and had the national Constitution always in mind.
The original draft of the article pertaining to the executive department which was reported to the Colorado constitutional convention by the committee on that subject contained an almost literal copy of the United States Constitution, article II, section II, paragraph 3, as to filling of vacancies, using the words "vacancies that may happen * * * during a recess of the senate" (Proc. of Const. Conv., p. 74). The committee of the whole changed the words to "in case of a vacancy * * * during a recess of the senate the governor shall make a temporary appointment until the next meeting of the senate when he shall nominate some person to fill such office." p. 128. The convention adopted this report. pp. 216-219. The committee on revisions and adjustments, of which the late Justice of this Court, E. T. Wells, was chairman, reported a substitute (p. 401), which read as does our present Constitution, and in this form it was finally passed by the convention and people. The word, then, vital to the present question, was before the convention in three forms, "happen", "In case of * * * ", which is equivalent to "be" or "exist", and, finally, "occur." Can it be doubted that *Page 280 
the last was chosen because it was supposed to mean something that the others did not? Judge Wells knew what words meant and how to use them, and was not a man to use them carelessly. If the committee wished the governor to fill vacancies which began before, but continued into a recess of the senate, why did not they leave the sentence as the committee of the whole had framed it? Or if they wished to follow the ideas of the United States Attorney General, why did they not go back to the original draft? This argument is not conclusive but seems of much force, and it discounts the New Jersey case, supra, because the words of the New Jersey Constitution were used and then abandoned. People, ex rel. v. May, 9 Colo. 80,97, 98, 10 P. 641.
The purpose of the section seems not to be more with Lehman than with Murphy. It was to provide for the continuous discharge of the duties of every office. During session, then, the governor must nominate and with consent appoint to fill the office; during recess he must appoint to discharge the duties ad interim. There are no other times than session and recess; all possible times are thus provided for; the incumbent, if there is one, continues to discharge the duties till the governor acts. So, assuming and excepting that the governor will do his duty and in due time seek the consent of the senate, all possible contingencies are met,* the plan of the defendant in error does not meet them better.
The governor may appoint a man to discharge the duties until the next session of the senate when he shall appoint some one to fill the office if a vacancy exists during the session of the senate.
It cannot be disputed that it is the governor's constitutional duty to nominate to the senate when it is in session and upon their consent appoint to fill every vacant office.
The fact that the governor nominated and the senate *Page 281 
failed to consent is, of course, irrelevant if "occur" means "begin."
As to authorities: Defendants in error cite People v.Osborne, 7 Colo. 605, but it is not precisely in point, It was decided on the point that there was no vacancy because the statute there in question provided that the "termof office shall continue" * * * until the successor is appointed and qualified, whereas here the expression is exercise the duties of the office until, etc.; We pointed out this distinction in Walsh v. People, supra. It therefore did not control us in Walsh v. People. The question now under consideration was not in that case.
They also cite Fritts v. Kuhl, supra, and In re Farrow, 3 Fed. 112, and various opinions of the United States Attorneys General all of which are strong in their favor. Some of these authorities, however, may be distinguished in that they depended, at least in part, on public necessity, because there was no one, as here there is, to discharge the duties. Their main reliance is Walsh v. People, but we have already distinguished that case.
Most of the authorities cited by the plaintiff in error go more particularly to the question of the existence of a vacancy rather than the meaning of the word "occur." Such are State, ex rel. v. Howe, 25 Oh. St. 588, 18 Am.Rep. 321; Dunbar v. Cronin, 18 Ariz. 583, 164 P. 447;People v. Tilton, 37 Cal. 614. In the latter case, however, Chief Justice Sawyer said, that it is the design of the Constitution to restrict the appointing power within the narrowest limits, and "If the point is doubtful, this recognized principle should turn the scale against the appointing power where there is a party authorized to perform the duties of the office till it can be filled by the regular appointing power." That statement fits the present case though the case does not, and, upon the principle thus stated and followed, which is stated and followed in numerous cases, we ought to be slow to stretch the statute so as to increase the powers therein granted. If the case is *Page 282 
entirely right we went too far in Walsh v. People, but now we are asked to go a step farther.
The position of plaintiff in error is strongly supported by People v. Forquer, 1 Ill. 104. The doubts expressed by the court in that case and quoted by counsel for defendant in error, relate to a point other than that now before us. To the same effect is Brady v. Howe, 50 Miss. 607. It is there assumed that "occur" means "arise," "begin," and it is held that the governor cannot appoint to fill a vacancy that occurred, i. e., began during session. Mecham on Public Officers, section 136, is also strong in support of this position. These and other less precise authorities and the other considerations above expressed constrain us, notwithstanding the opinions of the federal attorneys general and the other citations of the defendants in error, to say that "occur" means "arise," "begin," and not "exist." It follows that the governor cannot make an ad interim appointment in the present case, but must await the session of the senate or call a special session.
The judgment of the district court is reversed with directions to dismiss the case.
MR. JUSTICE CAMPBELL and MR. JUSTICE ADAMS dissent.
* Unless, perhaps, that of a vacancy by death or other unpredictable hap at the very end of a session, leaving no one to exercise the duties, when a special session might be necessary.