Stewaet, J.
Both parties in this case agree that there is one basic issue which this court must decide, and that is whether the relator has been lawfully appointed as Director of Mental Hygiene and Correction. If he has, respondent must issue a warrant or warrants in payment of his salary, and, if he has not, respondent has no such duty.
Section 121.03 (E), Revised Code, reads as follows:
“The Director of Mental Hygiene and Correction shall be appointed by the Governor, with the consent of the Senate, *168 and shall hold his office for a term of six years from the date of appointment. ’ ’
Section 141.03 (0), Bevised Code, provides that the Director of Mental Hygiene and Correction shall have an annual salary of $18,000.
We agree with the contention made in the present case that the Governor has no inherent power to make appointments to public offices, and that any power which he has is derived from either the Constitution or the statutes.
Section 27 of Article II of the Constitution of Ohio provides as follows:
“The election and appointment of all officers, and the filling of all vacancies, not otherwise provided for by this Constitution, or the Constitution of the United States, shall be made in such manner as may be directed by law; but no appointing power shall be exercised by the General Assembly except as prescribed in this Constitution; and in these cases the vote shall be taken ‘viva voce.’ ”
Section 2 of Article VII of the Ohio Constitution provides as follows:
“The directors of the penitentiary shall be appointed or elected in such manner as the General Assembly may direct; and the trustees of the benevolent, and other state institutions, now elected by the General Assembly, and of such other state institutions as may be hereafter created, shall be appointed by the Governor, by and with the advice and consent of the Senate; and, upon all nominations made by the Governor, the question shall be taken by yeas and nays, and entered upon the journals of the Senate.”'
Section 3 of Article VII provides as follows:
“The Governor shall have power to fill all vacancies that may occur in the offices aforesaid, until the next session of the General Assembly, and, until a successor to his appointee shall be confirmed and qualified.”
It is apparent that Sections 2 and 3 of Article VII have no application in the present case for the reason that relator has been appointed neither a director of the penitentiary nor a trustee of any state institution, and, therefore, we must look to the appropriate statute to ascertain the Governor’s power of ap *169 pointment as to the office of Director of Mental Hygiene and Correction.
The statute which authorizes the filling of a vacancy in this office is Section 3.03, Revised Code, which reads as follows:
“When a vacancy in an office filled by appointment of the Governor, with the advice and consent of the Senate, occurs by expiration of term or otherwise during a session of the Senate, the Governor shall appoint a person to fill such vacancy and forthwith report such appointment to the Senate. If such vacancy occurs when the Senate is not in session, and no appointment has been made and confirmed in anticipation of such vacancy, the Governor shall fill the vacancy and report the appointment to the next session of the Senate, and, if the Senate advises and consents thereto, such appointee shall hold the office for the full term, otherwise a new appointment shall be made.”
The vacancy in the office of Director of Mental Hygiene and Correction occurred on. October 15, 1956, at a time when the General Assembly was not in session.
Governor Lausche was then Governor of Ohio, and he made no appointment to fill the vacancy. There was a special session of the General Assembly, which met in November 1956 at the Governor’s call.
Governor Lausche resigned in January 1957, and Lieutenant Governor John Brown succeeded to his duties and was acting Governor when the 102nd General Assembly came into being. Acting Governor Brown made no appointment to fill the vacancy, and, when Governor O’Neill was inaugurated in January 1957, the 102nd General Assembly was in session. Governor O’Neill made no appointment to fill the vacancy until after the General Assembly had adjourned.
Under Section 3.03, Revised Code, was the appointment made by Governor O’Neill a valid one?
The whole controversy turns upon the meaning of the word, “occurs,” as used in this section.
Respondent contends that a vacancy can “occur” but one time, that, since the vacancy occurred, so far as Governor O’Neill was concerned, while the General Assembly was in session, he had a duty to make an appointment before the adjourn *170 ment of the General Assembly, and that he could not make the appointment after such adjournment.
The weakness in this contention is that the vacancy did not occur during a session of the General Assembly; it occurred on October 15, 1956, when it was not in session, and, if the contention of respondent is to prevail, the word, “occurs,” would have to mean not only “occurs” but “reoccurs.”
Relator contends that, in order for the statute to make sense, the word, “occurs,” must be interpreted to mean “may happen to exist.”
If the contention of respondent is correct, it is difficult to see how the appointment in the present case could ever be made.
The vacancy occurred when the General Assembly was not in session. A special session came and went without the appointment being made. Another regular session came and went ■without such appointment, and, if the present appointment was not legal, how could there ever be another occurrence of the vacancy either during a session of the General Assembly or during a time when it was not in session?
This is a real example of one of the fantastic and ludicrous results which might happen if a vacancy can occur at only one time.
Other examples come to mind, such as where an appointment is made during a session of the General Assembly and not confirmed before the sine die adjournment.
Another instance of the absurdity of the construction contended for would result if a vacancy occurred by death or resignation on the last day of a session of the General Assembly. There are many other reasonably visualizable situations which would make utterly ridiculous the construction for which respondent contends.
There is a principle of law that, in construing a statute, a construction which results in a ridiculous or absurd situation must be avoided if reasonably possible.
In State, ex rel. Cooper, v. Savord, Judge, 153 Ohio St., 367, 92 N. E. (2d), 390, the first paragraph of the syllabus reads as follows:
*171 “The General Assembly will not be presumed to have intended to enact a law producing unreasonable or absurd consequences. It is the duty of the courts, if the language of a statute fairly permits or unless restrained by the clear language thereof, so to construe the statute as to avoid such a result.”
To avoid the absurdity which would exist in the present case, we are of the opinion that the word, “occurs,” was intended by the General Assembly to mean to occur not just once but to “continue to occur” to any time at which an appointment is made. In fact, that interpretation has to be the one contended for by respondent when he says that, although the vacancy occurred on October 15,1956, it occurred as to Governor O’Neill at the time he took office.
Paragraph 3' of Section 2 of Article II of the Constitution of the United States reads as follows:
“The President shall have power to fill up all vacancies that may happen during the recess of the Senate, by granting commissions which shall expire at the end of their next session.” The word, “happen,” in this section has been consistently interpreted not only by opinions of the Attorney General of the United States but by usage to mean “happen to exist” and as giving the President authority during a recess of the Senate to fill vacancies originating while the Senate is not in session.
In 7 Opinions of the Attorneys General of the United States, 186, 223, Attorney General Caleb Cushing, who was one of the great lawyers in the history of America, stated as follows: “* * * [they] have thoroughly demonstrated, and conclusively established, as a doctrine of administrative law, that the expression of the Constitution — ‘all vacancies that may happen during the recess’ — signifies, ‘all vacancies that may happen to exist in the recess,’ or, ‘when there happen to be any vacancies in the recess’; and they concur in the general statement that, howsoever a vacancy happens to exist, if it exist, it may be filled by temporary appointment of the President. They well agree that it is the true spirit of the Constitution to have the offices, which Congress indicates to be needful by creating them, filled, though provisionally, rather than to remain vacant, or to force a special call of the Senate.”
*172 The same interpretation of the word, “happen,” was given by the Supreme Court of New Jersey in State, ex rel. Fritts, v. Kuhl, 51 N. J. Law, 191, 17 A., 102.
It is true that the Supreme Court of Colorado held otherwise in Murphy v. People, ex rel. Lehman, 78 Colo., 276, 242 P., 57, although in that ease there is a strong and persuasive dissenting opinion concurred in by two of the judges.
For the reason that Section 3.03, Revised Code, if given an interpretation as contended for by respondent, would not make sense and would lead to utterly absurd results, an example of one of which appears in the present case, and for the further reason that to construe the word, “occurs,” as meaning “continues to occur” would make the statute completely comprehensive, which must have been the intention of the General Assembly, we are of the opinion that the latter interpretation must be in accord with such intention.
Therefore, the demurrer to the answer is sustained, and the writ of mandamus prayed for herein is allowed.
TFn'i allowed.
Weygandt, C. J., Zimmerman and Taft, JJ., concur.
Matthias, Bell and Herbert, JJ., dissent.