(81 Misc. Rep. 279.)

PEOPLE ex rel. WOODS v. FLYNN.

(Supreme Court, Trial Term, Cayuga County. June 14, 1913.)

1. COUNTIES (§ 49*)—BOARD OF SUPERVISORS—APPOINTMENT BY BOARD—VALIDITY.

One who receives only a plurality of the votes cast by a board of supervisors is not elected a commissioner of elections; a majority vote being required by County Law (Consol. Laws 1909, c. 11) § 17.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 56–60; Dec. Dig. § 49.*]

2. ELECTIONS (§ 51*)—COMMISSIONER OF ELECTIONS—APPOINTMENT.

Under Election Law (Consol. Laws 1909, c. 17) § 194, providing for the recommendation of persons by the chairmen of the two principal political parties for appointment as commissioners of election, the board of supervisors does not act merely in a ministerial capacity, but has a right to approve or reject the person designated.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 44, 45; Dec. Dig. § 51.*]

3. ELECTIONS (§ 51*)—COMMISSIONERS OF ELECTION—APPOINTMENT—RECOMMENDATION OF PARTY CHAIRMAN.

After the supervisors reject the name presented by the chairman of one party, they have no right to appoint some other member of the same party as a commissioner of election, even though the chairman persists in his recommendation.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 44, 45; Dec. Dig. § 51.*]

4. ELECTIONS (§ 51*)—ELECTION COMMISSIONER—RIGHT OF PARTY TO NOMINATE—WAIVER.

The action of the party chairman in resubmitting to the board of supervisors the name of the same candidate after he had been rejected several times by the board did not amount to a waiver of the right to nominate an election commissioner.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 44, 45; Dec. Dig. § 51.*]

5. ELECTIONS (§ 51*)—TERM—HOLDING OVER.

One who has been a duly qualified election commissioner, and is recommended by the chairman of his party for reappointment, but whose appointment is refused by the board of supervisors, holds over until his successor is duly elected and qualified, and in the meantime is entitled to discharge the duties and receive the emoluments of the office.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 44, 45; Dec. Dig. § 51.*]

Action by the People of the State of New York, on the relation of Thomas F. Woods, against Patrick H. Flynn, to oust defendant from the office of Commissioner of Elections of Cayuga County. Judgment for plaintiff.

Richard C. S. Drummond, of Auburn, for plaintiff.

E. C. Aiken, of Auburn, for defendant.

CLARK, J. On the 27th day of July, 1911, by a resolution duly adopted by the board of supervisors of Cayuga county, the relator, Thomas F. Woods, was duly appointed a commissioner of elections for Cayuga county for the term expiring on the 1st day of January, 1913. Said appointment was made after the board of supervisors had received a certificate, duly executed by the chairman of the Democratic committee of said county, certifying that said Thomas F. Woods was a resident and qualified elector of Cayuga county, and a fit and proper person to be appointed as a commissioner of elections. After said appointment, said Thomas F. Woods duly qualified as such commissioner of elections, and entered upon the discharge of his duties, and continued to act as such commissioner up to and including the 1st day of January, 1913.

In December, 1912, and within the time required by section 194 of the Election Law (Consol. Laws 1909, c. 17), one James P. Doyle, who was chairman of the Democratic committee in and for Cayuga county, made, executed, and caused to be filed with the board of supervisors of said county a certificate substantially complying with the terms of said section 194 of the Election Law, certifying the name of the relator, Thomas F. Woods, as a fit and proper person to be appointed a commissioner of elections of said county, representing the Democratic party, for the term beginning on the 1st day of January, 1913, and recommending that he be appointed.

[1] There is no question as to the fact that relator was a fit and proper person to be appointed to said office. On the 5th day of December, 1912, at a meeting of the board of supervisors, action was taken on the matter, and the relator's name was rejected. It is his contention here that he was duly appointed; he having received a plurality of the votes cast. I cannot agree with that contention; for he did not receive the votes of a majority of the supervisors elected, and that was necessary to make his appointment effectual. County Law (Consol. Laws 1909, c. 11) § 17.

The chairman of the Democratic county committee was notified of the action of the board of supervisors, and was requested to recommend another name for appointment as election commissioner for Cayuga county, and in compliance with that request the chairman of said county committee resubmitted the name of relator, and it was again rejected by the board of supervisors. The chairman of said county committee was again notified of the action of the board of supervisors, and was requested to submit another name. In pursuance of that request he resubmitted the name of relator, which was again rejected by the board of supervisors, and that body thereupon

proceeded to appoint this defendant as a commissioner of elections for Cayuga county for the Democratic party.

Defendant was a member of the board of supervisors at the time of his appointment, has always been affiliated with the Democratic party, and is a fit and proper person to be appointed a commissioner. of elections; but relator urges that defendant's appointment was illegal, because his name had not been submitted or recommended for appointment by the Democratic county committee, acting through its chairman, and the question is presented whether or not, in view of that fact, the board of supervisors had the power to take the matter in its own hands and appoint a commissioner of elections representing the Democratic party who had never been recommended for such appointment by the chairman of the county committee.

I think it must be held that the action of the chairman of the county committee in submitting and recommending the name of relator for appointment as a commissioner of elections was in substantial compliance with the terms of section 194 of the Election Law, and that in whatever he did in that regard he represented the committee, as well as a majority of its members. He was its official head, and presumably correctly represented the committee. If he did not, he could be disciplined by the members of the body who had elected him.

Section 190 of the Election Law (Laws 1912, c. 406) provides:

" * * * There shall be a board of elections in each of the other counties of the state, but in counties having a population of less than one hundred thousand inhabitants such boards shall consist of two persons. * * * Not more than two of such commissioners, if the board of elections shall consist of four members, and not more than one of such commissioners if said board shall consist of two members, shall belong to the same political party or be of the same political opinion on state or national politics. * * * * "

It will thus be seen that the paramount idea of the Legislature by the passage of this law was that these boards of election commissioners should be bipartisan in their character, to the end that the dominant parties in this state should have equal representation on such boards, and that result would be achieved in this case, whichever of the contestants should receive this appointment; for there is no question but that defendant and relator are each affiliated with the Democratic party, and have been for many years, and that each is a fit and proper person for the position.

[2] In disposing of this matter, of course, the factional disturbances of the Democratic party in Cayuga county cannot be considered; the principal question here being whether or not defendant was legally appointed. The board of supervisors had a perfect right to reject the name of relator. That body was not a mere dummy, whose sole duty in regard to the appointment of the commissioners of election was to register the will of the chairman of a political county committee. While it may be said that the board had no right to capriciously reject the name of a person recommended by the county committee, I do not think it acted in a ministerial capacity in passing upon the name recommended by the chairman of the county committee. It

acted in a judicial capacity, and had a right to approve or reject the name as it was advised.

[3] But, while all this is so, it does not follow that when the supervisors rejected the name recommended by the chairman, and the same name had been resubmitted and again rejected, that gave them the right to go on and appoint another person, who had never been recommended by the head of the organization representing the political party with which he was affiliated. The whole plan of selecting these commissioners of election is so simple that, if all parties acted in entire good faith, there would be no difficulty in having the paramount legislative idea of a bipartisan board carried out. The idea was that in counties like Cayuga, where they have two commissioners of election, one should be selected from each of the two dominant parties, and the chairmen of the county committees of these parties should recommend the names, and how could the choice of such political parties for representation on such board be so well ascertained as in the manner prescribed by the Election Law itself? Election Law, § 194.

[4] The time has not yet come when political organizations are to be entirely ignored. In Cayuga county the political organization of one of the dominant parties, acting within the provisions of the Election Law, recommended the relator for the appointment as its representative on the board of election commissioners. The supervisors rejected the name, as they had a right to do; and if that political organization chose to resubmit the same name, I do not think it could thereby be deemed to have waived its right to submit any name at all. It was not necessary for relator to prove why the chairman of the Democratic county committee submitted his name a second and third time, for it must be assumed that the chairman properly represented his organization, and the situation established by the evidence here would hardly justify the inference that the Democratic organization, acting through its chairman, either waived, or intended to waive, its statutory right to recommend a fit and proper person to be its representative on the board of election commissioners of Cayuga county.

If is, of course, unfortunate that the chairman of the county committee did not see fit to submit another name after the board of supervisors had refused to appoint the relator; but he was clearly within his rights in resubmitting relator's name, and the board of supervisors was equally within its rights in rejecting it. But beyond that I think it had no right to go, for I think its power of appointment was limited to names submitted by the chairmen of the committees of the dominant parties of Cayuga county, and, defendant's name never having been submitted or recommended by the chairman of the county committee of the party with which he was affiliated, his appointment was unauthorized and is illegal. Matter of Kane v. Gaynor, 144 App. Div. 206, 129 N. Y. Supp. 280, affirmed 202 N. Y. 615, 96 N. E. 1117.

[5] It having been held that relator was illegally appointed, he having failed to receive the votes of a majority of the supervisors elected, and that defendant was not legally appointed, because his name had never been recommended by the chairman of the Democratic county

committee, the interesting question arises whether that party has at the present time any representation on the board.

There is no question but that relator was properly appointed for the term ending January 1, 1913, that he duly qualified and entered upon the discharge of his duties, and did discharge them up to that time. For the purpose of appointing his successor, his office would be deemed vacant after the expiration of his term; but, until his successor was appointed and had qualified, relator would undoubtedly hold over and be entitled to discharge the duties of his office as such election commissioner and receive the emoluments thereof. 29 Cyc. 1399; Kane v. Gaynor, supra; Public Officers Law, § 5; People ex rel. Lovett v. Randall, 151 N. Y. 497, 45 N. E. 841.

Judgment is therefore directed in favor of plaintiff, adjudging that the action of the board of supervisors of Cayuga county in the appointment of the defendant as such commissioner of elections, was without authority of law, and that the relator, Thomas F. Woods, is entitled to hold over in said office, and to continue to discharge the duties thereof, and to receive all the benefits and emoluments pertaining thereto, until his successor shall be legally appointed. Costs are allowed to plaintiffs. Findings may be submitted, and judgment entered accordingly.