Bernard S. Meyer, J.
May a County Board of Supervisors, after it has four times refused to appoint as Commissioner of Elections the person nominated by the County Chairman of the political party involved and twice called by resolution upon the County Chairman to submit another name, make an appointment of a person not nominated by the County Chairman?
This is a mandamus proceeding under article 78 to require the Suffolk County Board of Supervisors to rescind its appointment of Arthur M. Weiss as the Democratic Commissioner of Elections and commanding the said board to refrain from appointing anyone as such Democratic Commissioner unless he has been nominated by the Democratic County Chairman. The facts are not in dispute. On December 30, 1958, Andrew Havens, the then Democratic Commissioner, resigned. His resignation was effective immediately upon its being filed (Gelson v. City of New York, 237 App. Div. 889, affd. 262 N. Y. 497) and left a vacancy in the office of the Commissioner of Elections. Thereafter, prior to January 2, 1959, Adrian Mason, Chairman of the Suffolk County Democratic Committee, filed a certificate with the Board of Supervisors pursuant to subdivision 2 of section 52 of the Election Law, recommending himself for appointment as Commissioner of Elections. At the meeting of the Board of Supervisors held on January 2, a resolution proposing appointment in accordance with such nomination was lost unanimously. Prior to the January 12 meeting of the Board of Supervisors, said County Chairman again submitted his name by proper certificate and again a resolution of appointment was unanimously lost. At the same meeting, the board adopted a further resolution requesting the Democratic Chairman to certify the name of another person for appointment as Commissioner of Elections. On or about January 8, 1959 an action was commenced by the petitioner herein as a taxpayer against various *166 Suffolk County officials seeking to enjoin payments of expenditures for the operation of the Board of Elections office, alleging, in substance, that in view of the vacancy in the board its acts were illegal. The matter was decided by Mr. Justice Hogan, who rendered an opinion on January 22,1959 (Ahern v. McNab, 17 Misc 2d 162), which, in substance, permitted continuance of the ordinary functions of the Board of Elections. An appeal from the order entered on that decision is now pending.*
On January 26,1959 the Board of Supervisors met again and, the Democratic Chairman having once again submitted his own name, unanimously rejected a resolution proposing his appointment, and adopted a further resolution calling upon the Chairman to submit another name. On February 16, 1958, the board met again and rejected the resolution for the appointment of Mason, he having once again properly certified his own name. At the February 16 meeting a resolution was submitted by the Supervisor of the Town of Biverhead, who is a Democrat. That resolution, which was unanimously adopted, set forth the existence of the vacancy, the four rejections of Mason’s name, the requirement that the right of franchise of the citizens of Suffolk County be preserved, the opinion of the board that the Democratic County Chairman had had full, adequate and reasonable time to recommend some other person for appointment but had failed to do so and that the public interest compelled the vacancy be filled and concluded that the Supervisor of the Town of Biverhead having proposed Arthur M. Weiss, a resident and qualified voter of the County of Suffolk and a member of the Democratic party, for appointment, the board appoint the said Arthur M. Weiss for the remainder of the four-year term ending December 31,1962. The Supervisor from the Town of Biverhead states in an affidavit filed herein that he had been advised from newspaper stories and from members of the executive committee of the Democratic County Committee that the County Chairman would present no other name ‘ ‘ until 1960 if necessary ”, all of which information he imparted to the Board of Supervisors from which they concluded that the Democratic County Chairman intended to present his own name and no other for an indefinite period.
The return of the Board of Supervisors seeks dismissal of the application because Arthur M. Weiss is not made a party; because, it is claimed, the action taken by the Board of Supervisors on February 16, 1959 in making the appointment of Weiss is governmental action not reviewable by this proceed *167 ing; and because the petition seeks to determine title to a public office which, it is claimed, may only be done in a quo warranto proceeding. None of these is sufficient ground for dismissal.
The facts set forth above are not in dispute. It is well settled that where there is no disputed question of material fact but only an issue of law, the relief here requested may be awarded in a mandamus proceeding. Quo warranto is not the sole remedy and the person purporting to hold the office in question is not a necessary party to the proceeding. (Matter of Schlobohm v. Municipal Housing Auth., 270 App. Div. 1022, affd. 297 N. Y. 911; Matter of Felice v. Swezey, 278 App. Div. 958; Matter of Sylvester v. Mescall, 277 App. Div. 961; Matter of Rivette v. Baker, 265 App. Div. 89; Matter of Pansmith v. Williams, 201 Misc. 759.) Matter of Carp (221 N. Y. 643) cited by the respondents, is distinguishable since the opinion makes clear that the question there involved was, who was the duly elected Republican Chairman entitled to make a nomination, and this was held to be an administrative rather than a judicial determination of the board. Further, while the refusal of the board to appoint the person recommended by the Democratic County Chairman is governmental action not reviewable by this court, the court may determine whether the board in appointing Weiss exceeded its jurisdiction or exercised its authority in the manner required by law (Civ. Prac. Act, § 1296).
On the substantive question the court concludes that the appointment of Arthur M. Weiss made by the board on February 16, 1959 was illegal. The Constitution, the statutes, the case law and administrative determinations over a period of almost 48 years have made it clear that the board cannot be required to appoint a particular person, but cannot make an appointment that is not recommended to it on nomination of the party chairman involved.
It is true that section 1 of article II of the New York State Constitution guarantees the right of franchise to citizens of the State and that this right cannot be frustrated by a political squabble. It is also true, however, that section 8 of the same article of the Constitution (a provision of equal dignity with section 1) requires that “All such boards and officers «ball be appointed or elected in such manner, and upon the nomination of such representatives of said parties respectively, as the legislature may direct”. (Emphasis supplied.) The Legislature by section 30 of the Election Law has established the qualifications of Commissioners of Elections, and by subdivision 2 of section 52 of that law has provided with respect to Suffolk *168 County that recommendations shall be made by “ the respective chairmen of the county committees of * * * the two politi-
cal parties ”. The same pattern has been followed with respect to other counties (Election Law, §§ 31, 51) although in some instances it has been required that the recommendation be by the County Chairman with the concurrence of the party executive committee. (1912 Atty. Gen. 562.) The framers of the Constitution and the Legislature have thus wisely provided for bi-partisan supervision over the election machinery and in order to assure that a Board of Supervisors controlled by one party not be able to appoint a friendly member of the opposing party to do its bidding have given the party chairman alone or together with his executive committee the authority to nominate his party’s representative on the board.
These provisions first came before the courts in Matter of Kane v. Gaynor (144 App. Div. 196, affd. 202 N. Y. 615). The decision of the Appellate Division for the Second Department, rendered April 28, 1911, held that despite his nomination by the Democratic Chairman of Kings County, such nominee could not maintain a mandamus proceeding against the Mayor of the City of New York to require his appointment as Commissioner of Elections. The opinion of three of the Justices having indicated that the Mayor had full authority to appoint a Commissioner of Elections without anyone sharing in the responsibility by way of nomination, two of the Justices wrote a separate concurring opinion referring specifically to this indication and stating (pp. 206-207):
“ To so hold seems to me to set at naught the clear provisions of the statute. The scheme therein contained is perfectly plain and simple. In effect it is not unlike the provisions of many other statutes which require that an appointment shall be made by one individual or body of individuals, subject to the approval of another individual or body of individuals. The fact that the approval precedes instead of succeeds the action of the appointing power makes no difference in the principle. The county committee in effect signifies to the mayor that it will approve of his appointment of a designated person. He may not choose to make such appointment. Upon being advised of the fact, the committee must continue to propose the names of individuals who will be approved by it until one is proposed which the mayor is satisfied to appoint.
“ There is no force in the suggestion that this may lead to a vacancy in the office. Self-interest would require the county committee to use its best endeavors to propose an acceptable person. *169 It is impossible to conceive of a situation where the mayor of a great city could not, with full sense of his own responsibility as the appointing power, find from some of the persons thus designated one who possessed the requisite qualifications for the office as he viewed them.”
The Court of Appeals affirmed, on the basis of the concurring opinion below, thus clearly holding that the appointing body had no authority to make an appointment of a nominee who had not been recommended to it as required by the statute. Administrative recognition of this holding is contained in two opinions of the Attorney-General (19 N. Y. St. Dept. Rep. 346, 350; 1913 Atty. Gen. 616).
The question came before the Supreme Court of Cayuga County in 1913 in People ex rel. Woods v. Flynn (81 Misc. 279) on a fact situation strikingly similar to the case at bar. The court held that the appointment made by the Board of Supervisors without the nomination of the party chairman was without legal authority, stating (pp. 284-285):
“ The time has not yet come when political organizations are to be entirely ignored. In Cayuga county the political organization of one of the dominant parties, acting within the provisions of the Election Law, recommended the relator for the appointment as its representative on the board of election commissioners. The supervisors rejected the name, as they had a right to do, and if that political organization chose to resubmit the same name, I do not think it could thereby be deemed to have waived its right to submit any name at all. It was not necessary for relator to prove why the chairman of the Democratic county committee submitted his name a second and third time, for it must be assumed that the chairman properly represented his organization, and the situation established by the evidence here would hardly justify the inference that the Democratic organization, acting through its chairman, either waived, or intended to waive, its statutory right to recommend a fit and proper person to be its representative on the board of election commissioners of Cayuga county.
“ It is of course unfortunate that the chairman of the county committee did not see fit to submit another name after the board of supervisors had refused to appoint the relator, but he was clearly within his rights in resubmitting relator’s name, and the board of supervisors was equally within its rights in rejecting it, but beyond that I think it had no right to go, for I think its power of appointment was limited to names submitted by the chairman of the committees of the dominant parties of *170 Cayuga county, and defendant’s name never having been submitted or recommended by the chairman of the county committee of the party with which he was affiliated, his appointment was unauthorized and is illegal. ’ ’
As recently as June, 1942 the Court of Appeals once again clearly indicated the posture of the constitutional and statutory provisions when it held in Matter of Thomas v. Wells (288 N. Y. 155) that it could not order a Board of Supervisors to appoint a particular person nominated by a party chairman and concluded its opinion with the following sentence (p. 157): “ Under the circumstances, we have no function but to point out the command of the Constitution of the State that Boards of Supervisors are to secure bi-partisan Commissions of Elections in the manner prescribed by the statute.” (Emphasis supplied.)
It is of importance to note that during the near half century that the administrative and case law have held that the party chairman cannot require the appointment of a particular person but that no appointment can be made without the chairman’s recommendation, the Legislature with full power under the Constitution to resolve the matter has failed to act. On what basis then does the board now contend that it was authorized to appoint Weiss without the statutory recommendation? The authority, it is said, stems from the letter and spirit (see Matter of Reynolds, 202 N. Y. 430, 443) of the constitutional provisions relating to the franchise and to the fact that if the board does not act the voting rights of the citizens will be frustrated. Aside from the fact that the board’s answer alleges that, under the order of Mr. Justice Hogan, “the ordinary functions of the Board of Elections ” are continuing (Par. 14 [c]), it can with equal cogency be argued that the letter and spirit of the Constitution (art. II, § 8) dictate that the board not be' permitted to take an action which could (though of course it is not intended to hold that the Weiss appointment does) frustrate the whole plan of bi-partisan election boards.
This is not to say that a party chairman will be permitted endlessly to submit one name, nor indeed that a Board of Supervisors can endlessly reject all names submitted until the election machinery collapses because it has no administrative head. We do not have that situation here, for not only is the board carrying out its ordinary functions, but also when on February 16 the board acted there were no impending elections or other matters of extreme urgency, or at least none are shown by the papers to have existed.
This is also not to say that the board is without remedy when a party chairman arbitrarily refuses to submit another name, *171 but only to hold that the board’s remedy is not self-help, for through self-help the constitutionally required bi-partisanship might be perverted. It is not necessary now to determine the extent to which the chairman of a political party may go in continuing to submit a name previously rejected by the board. Since in making the nomination of a Commissioner under section 52 of the Election Law, the Suffolk County Democratic Chairman participates in a governmental function, he is to that extent a governmental officer and is subject to the same mandatory power of this court when he fails to perform a duty specifically enjoined upon him by law (Civ. Prac. Act, § 1296) as is now invoked against the board. Alternately, it would appear that the board may seek a declaration under section 473 of the Civil Practice Act that the party chairman may not, absent a change of circumstances in the interim, resubmit a name once rejected by the board. Any implication in People ex rel. Woods v. Flynn (81 Misc. 279, supra) to the contrary notwithstanding, the courts are available for such determination.
Strong arguments can be made for change in the established method so that neither the citizens ’ voting rights nor the party members’ partisan rights can.be frustrated. Such change is, however, for the Legislature rather than this court to make. AU that it is necessary now to hold, and all that is held, is that, since court proceedings are available in which to litigate the question, a Board of Supervisors may not determine for itself that the party chairman has waived the right of nomination given him by statute and constitutional provision. To hold otherwise is to take the first step toward a system of one-party government.
The February 16, 1959 resolution of the board appointing Arthur M. Weiss is annulled and the prayer of the petition is granted.
Settle order on notice.

 Since modified, 7 A D 2d 546.— [Rep.